**ROBINSON CALCAGNIE, INC.**
Daniel S. Robinson (SBN 244245)
*drobinson@robinsonfirm.com*
Michael W. Olson (SBN 312857)
*molson@robinsonfirm.com*
19 Corporate Plaza Drive
Newport Beach, California
(949) 720-1288; Fax: (949) 720-1292

**LARSON, LLP**
Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN 249203)
*ak@kazlg.com*
Mona Amini (SBN 296829)
*mona@kazlg.com*
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger (*Pro Hac Vice*)
*gklinger@milberg.com*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re loanDepot Data Breach Litigation* | Case No.: 8:24-cv-00136-DOC-JDEx |
| | <u>Assigned for All Purposes to:</u><br><u>Courtroom 10A, Hon. David O. Carter</u> |
| This Document Relates to: All Cases | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | **[Filed Concurrently with Declarations and Proposed Order]** |
| | Date:          January 13, 2025<br>Time:          8:30 a.m.<br>Courtroom:     10A |

# <u>NOTICE OF MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2025, at 8:30 a.m., in Courtroom 10A of the above-captioned Court before the Hon. David O. Carter, Plaintiffs Alphonso Woods, David Ware, Deborah McPhail, Josh Krieghauser, Daroya Isaiah, Joshua Beller, Maurice Beckwith, Robert Lash, Ryan Azinger, Lorenz Praefcke, Varun Singh, Debra Coe, Loretta Montgomery, Vidal Hernandez, Tracy Brown, Branislav Sasic, Jessica Schuler, Kyle Nunnelly, Nailah Ricco-Brown, and Matthew McFall (collectively, "Plaintiffs"), will and hereby do move for an Order in accordance with Federal Rule of Civil Procedure 23:

(1) granting preliminary approval of the concurrently filed proposed Class Action Settlement Agreement and Release;

(2) finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied;

(3) approving the Parties' proposed Notice Plan and forms of Notice;

(4) appointing Plaintiffs as Class Representatives for the Settlement Class;

(5) appointing Daniel S. Robinson of Robinson Calcagnie, Inc., Tina Wolfson of Ahdoot & Wolfson, PC, Abbas Kazerounian of Kazerouni Law Group APC, Stephen G. Larson of Larson LLP, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel;

(6) approving the selection of Angeion Group as the Settlement Claims Administrator;

(7) setting deadlines for any objections to, and/or requests for exclusion from, the proposed Settlement; and

(8) scheduling a Final Approval Hearing before the Court.

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities set forth below; the Joint Declaration of Daniel S. Robinson,

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Tina Wolfson, Abbas Kazerounian, Stephen G. Larson, and Gary M. Klinger; the Settlement Agreement and all exhibits thereto; the Declaration of Jerry Thompson on behalf of CyEx LLC; the Declaration of Steven Weisbrot on behalf of Angeion Group; the Declarations of Plaintiffs; the [Proposed] Preliminary Approval Order; the record in this action; and any other matters and argument the Court may consider at the hearing of this motion.

Dated: December 2, 2024                    Respectfully submitted,

/s/ Daniel S. Robinson
Daniel S. Robinson
Michael W. Olson
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, California
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

/s/ Abbas Kazerounian
Abbas Kazerounian
Mona Amini
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523
ak@kazlg.com
mona@kazlg.com

/s/ Stephen G. Larson
Stephen G. Larson
LARSON, LLP
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000
slarson@larsonllp.com

/s/ Gary M. Klinger
Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

/s/ Tina Wolfson
Tina Wolfson
Deborah De Villa
AHDOOT & WOLFSON, PC
2600 W Olive Ave, Ste 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
ddevilla@ahdootwolfson.com

***Interim Co-Lead Counsel for Plaintiffs***

1

# **TABLE OF CONTENTS**

2  I.    INTRODUCTION ...............................................................................................1

3  II.   BACKGROUND ................................................................................................2

4      A.   The Data Breach .......................................................................................2

5      B.   Settlement Negotiations and Mediation ...................................................2

6  III.   THE TERMS OF THE SETTLEMENT ...........................................................3

7      A.   The Settlement Class and Release ............................................................3

8      B.   The Monetary Terms of the Settlement ...................................................4

9          1.   Financial Monitoring .....................................................................4

10         2.   Cash Payments to Settlement Class Members.................................5

11         3.   loanDepot's Remedial Measures ....................................................7

12         4.   Attorneys' Fees and Costs and Service Awards.............................8

13         5.   Total Value of the Settlement ........................................................9

14     C.   The Notice Plan .......................................................................................9

15     D.   The Proposed Settlement Administrator..................................................10

16     E.   Opt-Out and Objection Procedures.........................................................11

17  IV.   ARGUMENT.....................................................................................................12

18     A.   The Legal Standards for Preliminary Approval ......................................12

19     B.   The Settlement Merits Preliminary Approval .........................................12

20         1.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and
21              Likely Duration of Future Litigation ............................................12

22         2.   The Risk of Maintaining Class Action Status ...............................14

23         3.   The Amount Offered in Settlement ...............................................15

24         4.   The Extent of Discovery Completed and the Stage of Proceedings............16

25         5.   The Experience and Views of Counsel..........................................17

26         6.   The Response to the Settlement.....................................................17

27         7.   The Settlement Is Non-Collusive ..................................................17

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

8.    The Proposed Notice Plan Is Appropriate ...................................................18

C.    Class Certification Is Appropriate ....................................................................19

1.    Rule 23(a) Is Satisfied .........................................................................19

a. The Class Is Sufficiently Numerous ..........................................................19

b. There Are Common Questions of Law and Fact.......................................19

c. Class Representatives' Claims Are Typical ...............................................20

d. Class Representatives and Class Counsel Adequately Represent Class

Members.........................................................................................................20

2.    Rule 23(b)(3) Is Satisfied.....................................................................21

3.    The Court Should Appoint Plaintiffs as Class Representatives and Maintain

Its Prior Lead Counsel Appointment ....................................................................22

V.    CONCLUSION.............................................................................................23

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013) ..............................19

*Alabsi v. Savoya, LLC*, No. 18-CV-06510, 2020 WL 587429 (N.D. Cal. Feb. 6, 2020) ...........................................................................................................................................13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................. 19, 20, 21

*Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-CV-119, 2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ......................................................................................................................9

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)....................22

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...............................18

*Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ............................................................................................................15

*Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ....................................................................................................13

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ..............................12

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)..................................20

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) .....................................................21

*Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)..................................................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........................................20

*Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ............................................................................................................13

*In re Anthem, Inc. Data Breach Litig.*, 2017 WL 9614789 (N.D. Cal. Aug. 25, 2017) .............................................................................................................................11

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) .................21

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..........12, 17

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002)..............................22

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL
 1288377 (N.D. Cal. Mar. 18, 2020)..........................................................15

*In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887 (N.D.
 Cal. Jan. 25, 2021) ....................................................................15, 16

*In re Linkedin User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ...........................16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .............................16

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015).............11, 12

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL
 3773737 (N.D. Ohio Aug. 12, 2019) ......................................................13

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-
 TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ...............................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895
 F.3d 597 (9th Cir. 2018) .............................................................20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020
 WL 4212811 (N.D. Cal. July 22, 2020) ...................................................8

*Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004, 2021 WL 3081091
 (N.D. Cal. July 21, 2021)...............................................................13

*Just Film, Inc. v. Buono,* 847 F.3d 1108 (9th Cir. 2017)...............................22

*Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D.
 Cal. Apr. 2, 2018) .................................................................14

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)..................................19

*Perks v. Activehours, Inc.*, No. 5:19-CV-05543, 2021 WL 1146038 (N.D. Cal. Mar.
 25, 2021) .........................................................................13

*Phillips Co. v. Shutts*, 472 U.S. 797 (1985)...............................................21

*Sandoval v. Roadlink USA Pac., Inc.*, No. EDCV 10-00973, 2011 WL 5443777 (C.D.
 Cal. Oct. 9, 2011).................................................................19

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) ...............................11

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1  *Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244 (C.D. Cal. Sept. 30, 2016) .........13

2  *Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) ......................................................20

3  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ..............................12

4  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)..........................................19, 21

5  *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX, 2016 WL

6      8578913 (C.D. Cal. Dec. 2, 2016) ........................................................................18

7  *Yamagata v. Reckitt Benckiser LLC*, No. 3:17-CV-03529, 2021 WL 5909206 (N.D.

8      Cal. Oct. 28, 2021)................................................................................................13

9  **Other Authorities**

10 Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b) ......................................17

11 Manual for Complex Litigation (Fourth) § 13.12.......................................................16

12 **Rules**

13 Fed. R. Civ. P. 23 ................................................................................. passim

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs[1] respectfully present the Court with an agreement to settle their claims against Defendant loanDepot, Inc. ("loanDepot" or "Defendant") on a nationwide, class basis. If approved, the Settlement will establish a non-reversionary cash Settlement Fund of $25 million, providing Participating Settlement Class Members with a Monetary Payment, reimbursement of Out-of-Pocket Costs, and Financial Monitoring and Identity Theft Insurance Services ("Financial Monitoring"), plus an additional California Subclass Payment to compensate residents of California for their California Consumer Privacy Act, Cal. Civ. Code §§ 1798.150, et seq. ("CCPA") claims. The Settlement includes remedial efforts and business practices changes taken by loanDepot following the Data Breach, which are estimated to have cost loanDepot $9,341,000.00, which will benefit all Settlement Class Members irrespective of whether they file a claim. The Settlement Fund will also cover Administrative Expenses, and any Service Awards to Class Representatives and attorneys' fees and costs awarded by the Court.

The Settlement is the product of informed, arm's-length settlement negotiations, including a full-day mediation on June 6, 2024, with the Hon. Jay C. Gandhi (Ret.) and nearly six months of negotiations between the Parties. loanDepot also provided necessary information and produced pertinent documents prior to mediation, and participated in post-mediation confirmatory discovery, including a Federal Rule of Civil Procedure 30(b)(6) deposition and written discovery. The Settlement was reached at a critical juncture in the litigation, prior to Plaintiffs bearing the risks and expenses associated with rulings on motion to dismiss, class certification or summary judgment, and in a manner which preserves and redirects resources to the Settlement Class.

---

[1] Capitalized terms have the meanings set forth in the Settlement Agreement ("SA"), filed concurrently herewith.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Considering the risks of protracted litigation and Plaintiffs' assessment of Defendant's potential insolvency, the Settlement presents a fair recovery that delivers tangible immediate benefits to all Settlement Class Members and merits preliminary approval.

## II.    BACKGROUND

### A.    The Data Breach

loanDepot is an Irvine, California-based nonbank holding company and the nation's fifth largest retail mortgage lender, funding more than 27,000 consumer mortgages per month.

Plaintiffs allege loanDepot failed to adequately secure and safeguard its vulnerable networks, resulting in a massive data breach where the PII of approximately 16.9 million customers nationwide was accessed and exfiltrated by unauthorized parties. According to loanDepot's January 8, 2024 announcement, between January 3-5, 2024, an unauthorized third party gained access to loanDepot's systems which maintained Plaintiffs' and Class Members' names, addresses, email addresses, financial account numbers, Social Security numbers, phone numbers, and dates of birth.

Following the Data Breach announcement, 20 putative class action complaints were filed against loanDepot. The majority of Plaintiffs' counsel self-organized and proposed that the Court appoint Interim Class Counsel. In accordance with Rule 23(g), Daniel S. Robinson of Robinson Calcagnie, Inc., Tina Wolfson of Ahdoot & Wolfson, PC, Abbas Kazerounian of Kazerouni Law Group APC, Stephen G. Larson of Larson LLP, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC were appointed as Interim Co-Lead Counsel. (Dkts. 53, 55). On June 3, 2024, Plaintiffs filed a Consolidated Class Action Complaint against loanDepot. (Dkt. 69).

### B.    Settlement Negotiations and Mediation

The Parties began engaging in arm's-length settlement negotiations before Plaintiffs filed their Consolidated Complaint and, on June 6, 2024, participated in a full-day mediation before Hon. Jay C. Gandhi (Ret.) of JAMS. Joint Declaration of

Daniel S. Robinson, Tina Wolfson, Abbas Kazerounian, Stephen G. Larson, and Gary M. Klinger ("Joint Decl.") ¶ 10. In advance of mediation, the Parties exchanged mediation briefs addressing the claims and defenses in detail, and Defendants provided information and documents concerning the cause and scope of the Data Breach, and Defendant's remedial efforts. *Id.* Following mediation, the Parties continued to engage in arm's-length discussions through Judge Gandhi. These efforts resulted in an agreement on the general contours of a class settlement. Dkt. 78; *see* Declaration of Jay Gandhi ("Gandhi Decl.").

Since then, the Parties exchanged multiple drafts of the Settlement Agreement and resolved several disagreements concerning its terms. *Id.* ¶ 21. The Parties conducted confirmatory discovery, including a Rule 30(b)(6) deposition of loanDepot's Chief Information Security Officer concerning the cause and scope of the Data Breach and loanDepot's remedial measures, and written discovery concerning loanDepot's financial condition. *Id.* ¶ 22. Concurrently, Plaintiffs secured multiple bids from competing settlement administrators and financial monitoring companies to select the administrator and product best suited for this Settlement. *Id.* ¶ 23.

The Agreement resolves all claims, actions, and proceedings asserted, or that could be asserted, against loanDepot arising out of or related in any way to the alleged Data Breach, by or on behalf of members of the Settlement Class, but excluding the rights of Settlement Class members who opt out from the Settlement Class after receiving notice of this Settlement or as otherwise stated in this Agreement.

## III.    THE TERMS OF THE SETTLEMENT

### A.    The Settlement Class and Release

The proposed Settlement Class is defined as:

> The approximately 16,924,007 individuals in the United States who received notice from loanDepot that their data may have been impacted or otherwise compromised by the Data Breach and are identified on the Settlement Class List.

SA ¶¶ 47, 58. Plaintiffs also seek to certify the following California Subclass:

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

> The approximately 2,449,083 Settlement Class Members who were residents of the State of California, as identified on the Settlement Class List, and those Settlement Class Members who aver through a valid Claim Form and provide Reasonable Documentation that they were a California resident between January 3, 2021, and the filing date of the Preliminary Approval Motion.

*Id.* ¶¶ 7, 58. Excluded from the Settlement Classes are: (1) the judges presiding over the Action, and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, and directors, and (3) persons who timely opt out of the Settlement. *Id.*

In exchange for the Settlement's benefits, all Settlement Class Members will release all Released Claims against Defendant as detailed in the Settlement Agreement. *Id.* ¶¶ 40-42, 60.

### B.    The Monetary Terms of the Settlement

The Settlement provides for a non-reversionary cash Settlement Fund of $25 million, used to pay (i) all Administrative Expenses; (ii) any Taxes; (iii) the cost of the Financial Monitoring and Insurance Services; (iv) any Monetary Payments, Out-of-Pocket Costs Payments, and California Subclass Payments; (v) any court-approved Service Awards; (vi) any court-approved attorneys' fees and costs; and (vii) any other Settlement Benefits. SA ¶¶ 51, 64-87.

#### 1.    Financial Monitoring

Each Participating Settlement Class Member who submits a valid claim is eligible to receive two years of Financial Monitoring and Insurance Services. SA ¶¶ 24, 76. The Financial Monitoring will be Financial Shield Pro provided through CyEx by Pango Group and includes the following benefits: Financial Transaction Monitoring; Monthly Credit Score; Score Tracker; Bank & Financial Account Monitoring; High Risk Transaction Monitoring; Real-Time Authentication Alerts; Fictitious Identity Monitoring; Home Title Monitoring; Dark Web Monitoring; Address Change Monitoring; Security Freeze Assist; Lost Wallet Protection; Insight &

Tips News Feeds on the Customer Dashboard; Spend Tracking; $1,000,000 Comprehensive Identity Theft Insurance; Victim Assistance; and Customer Support. The Financial Monitoring and Insurance Services is valued at $12.95 per month for each Participating Settlement Class Member electing to receive that benefit. Declaration of Jerry Thompson on behalf of CyEx ¶ 9. Thus, for the two-year term, a single subscription is valued at $310.80. Accordingly, for every 1% of Participating Class Members, this benefit provides $52,599,813.76 in raw value based on the retail cost of the subscription, before deducting the cost of securing those services.[2] SA ¶ 87.

### 2.    Cash Payments to Settlement Class Members

All Participating Settlement Class Members are eligible to submit a claim for cash payment of up to $5,000 for reimbursement of Out-of-Pocket Costs that relate to any identity theft and fraud fairly traceable to the alleged Data Breach, incurred on or after January 3, 2024, and must be supported by Reasonable Documentation. SA ¶¶ 34, 39, 76.b, 79.

Each Participating Settlement Class Member will receive a payment from the Settlement Fund for the alleged damages they suffered because of having their PII allegedly disclosed during the alleged Data Breach. The payment amount will be each Participating Settlement Class Member's *pro rata* share of the remaining Net Settlement Fund, after all other Settlement Benefits have been paid for out of the Remaining Net Settlement Fund. The following chart depicts the approximate Monetary Payment amount before deducting Out-of-Pocket Costs Payments:

///

///

///

---

[2] Calculated as 169,240.07 (1% of the nationwide class) x $310.80 (value of two-year subscription).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

| Participation Rate | Approx. Monetary Payment |
|:---:|:---:|
| 1% | $70.71 |
| 2% | $34.37 |
| 3% | $22.26 |
| 4% | $16.20 |
| 5% | $12.57 |
| 6% | $10.14 |
| 8% | $7.11 |
| 10% | $5.30 |

Each Participating Settlement Class Member that is part of the California Subclass will receive a California Subclass Payment for their CCPA claim. The CCPA affords California residents with statutory damages of not less than $100 and not greater than $750 per consumer per incident for certain data breaches. The California Subclass Payment amount will be each Participating California Subclass Member's *pro rata* share of the California Subclass Settlement Fund, which is $3,650,000.00. Under no circumstances will the California Subclass Payment exceed $150 per California Subclass member. The following chart details the potential California Subclass Payment amounts (which varies by the participation rate for the California Subclass):

| Participation Rate | Approx. California Subclass Payment |
|:---:|:---:|
| 1% | $149.04 |
| 2% | $74.52 |
| 3% | $49.68 |
| 4% | $37.26 |
| 5% | $29.81 |
| 6% | $24.84 |
| 8% | $18.63 |
| 10% | $14.90 |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

If the Monetary Payment to each Participating Settlement Class Member receiving that benefit or the California Subclass Payment to each Participating Settlement Class Member were to be less than Three Dollars and No Cents ($3.00), no Monetary Payments or California Subclass Payments will be made. Instead, the Parties will meet and confer on how to disperse the Net Settlement Fund and present the plan to the Court for approval.

Participating Settlement Class Members will receive Settlement Payments via electronic means made available by the Settlement Administrator or may elect payment by physical check. SA ¶ 77. Settlement Payments will be reduced on a *pro rata* basis, if necessary. *Id.* ¶¶ 76.b-d, 82. Class members will have 90 days following distribution to deposit or cash their Settlement Payment. Participating Settlement Class Members with Approved Claims who receive Financial Monitoring will have 90 days following distribution of the enrollment instructions to sign up for the services. *Id*. ¶¶ 80-81.

Any monies remaining in the Net Settlement Fund or California Subclass Settlement Fund 180 days after distribution will be evenly distributed to all Participating Settlement Class Members with Approved Claims who cashed or deposited the initial payment they received, provided that the payment amount is equal to or greater than $3.00. *Id*. ¶ 84. Subject to Court approval, any remaining funds will be distributed to Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members. SA ¶¶ 28, 84.

### 3. loanDepot's Remedial Measures

The Parties agree that Class Representatives, Class Counsel, and this litigation were a motivating factor for certain remedial efforts and business practices changes taken by loanDepot following the Data Breach, including but not limited to enhancements in data management, identity protection, cloud security, and threat detection capabilities, which are estimated to have cost loanDepot $9,341,000.00. SA ¶ 86. The remedial measures are a meaningful benefit to all Settlement Class Members

as well as other loanDepot customers who are not Class Members.

### 4.    Attorneys' Fees and Costs and Service Awards

Class Counsel will seek an award of attorneys' fees and costs not to exceed $7,500,000, and Service Awards for Class Representatives not to exceed $2,500 each. SA ¶¶ 105-10. The motion for attorneys' fees and costs (and Class Representative Service Awards) will be filed at least 35 days before Objection Deadline so Class Members will have the opportunity to review and object. *Id*. ¶¶ 105, 108. Class Counsel will detail their work, hours, lodestar, and expenses in their motion. Pursuant to the Settlement Agreement, Class Counsel will have discretion to allocate the amount of Fee Awards and Costs to counsel for Plaintiffs, absent an order by the Court. *Id*. ¶¶ 108-10. After reimbursement of costs and payment of fees to Plaintiffs' Counsel, Class Counsel have agreed to divide any attorney fee award evenly amongst themselves. Joint Decl. ¶ 25.

The Service Awards are comparable to those awarded in other similar settlements. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *1 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach case). The proposed Class Representatives each understand their responsibilities serving as a Class Representative, have participated in this litigation from its inception, spent time providing valuable information to Class Counsel in connection with investigating and developing their claims in this action, reviewed and approved documents including the Complaint and the Settlement Agreement, and dedicated themselves to vigorously pursuing litigation on behalf of the putative class, including committing and exposing themselves to the possibility of sitting for depositions and testifying publicly at trial.[3]

The Parties have no agreement as to the attorneys' fees or litigation costs to be

---

[3] *See* Plaintiffs' declarations attached as **Exhibit 6** to the Joint Declaration.

1  paid to Class Counsel, and the Settlement is not contingent upon the Court awarding

2  attorneys' fees, costs, and expenses, or Class Representative Service Awards. SA ¶

3  110. loanDepot may oppose any such motion for attorneys' fees and costs. *Id.*

4       **5.**    **Total Value of the Settlement**

5       Given the amount of the Settlement Fund, the ability to claim at least two years

6  of Financial Monitoring, and the improvements to loanDepot's data security practices

7  valued at $9,341,000.00, Plaintiffs and Class Counsel conservatively estimate that the

8  total value of the Settlement Benefits is in excess of $86 million. SA ¶ 87; Joint Decl.

9  ¶¶ 12, 37-38. The actual value of the Settlement Benefits provided to the Class is

10 $34,341,000 plus an additional $52,599,813.76 for every one percent (1%) of Class

11 Members receiving Financial Monitoring and Insurance Services (before deducting the

12 cost of Financial Monitoring and Insurance Services).[4] For example, if only one percent

13 (1%) of the Settlement Class enrolls in Financial Monitoring, the total value of the

14 Settlement Benefits will be approximately $86,607,410.82. *Id.*

15     **C.**    **The Notice Plan**

16      The proposed Notice forms are attached to the Settlement as Exhibits D (Long

17 Form Notice) and F (Summary Notice). The Claim Form is attached as Exhibit A.

18      Within 10 business days of the Preliminary Approval Order, loanDepot will

19 provide the Settlement Class List to the Settlement Administrator. SA ¶ 91. Within 30

20 days thereafter, the Settlement Administrator will disseminate the Summary Notice to

21 the Settlement Class. *Id.* ¶ 92. For Settlement Class Members with known emails

22 addresses, notice will be provided via email given the efficiency of electronic delivery.

23 *Id.*; *see Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, No. 3:12-CV-00090-TMB, 2015

24 WL 13376562, at *2 (D. Alaska Feb. 4, 2015) ("email is an efficient and inexpensive

25 form of notice, and for many people it has supplanted postal mail as a preferred form

26  

27  

28   [4] The Financial Monitoring is valued at $12.95 per month for each Participating Settlement Class Member receiving that benefit. *See* Thompson Decl. ¶ 8.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

of communication."); *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020) (email is "an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner.") (citation omitted). The Settlement Class List will have email addresses for approximately 92.4% of the Settlement Class Members. SA ¶ 92. For Settlement Class Members who receive e-mail Notice, a reminder email will be sent within 21 days of the initial email providing Notice. *Id*. ¶ 94.

Summary Notice will be sent via U.S. Mail to Settlement Class Members for whom loanDepot does not have email address information or for whose email address are confirmed undeliverable. SA ¶¶ 92-93. Within 21 days after the Settlement Administrator's receipt of any Summary Notice returned by USPS as undelivered or undeliverable, the Settlement Administrator will re-mail the Summary Notice using any forwarding address provided by USPS *Id*. If the postal service does not provide a forwarding address, the Settlement Administrator will conduct an address search and re-mail the Summary Notice to the most current address obtained. *Id*.

The Summary Notice will include the URL for the Settlement Website (www.loanDepotBreachSettlement.com), where online claims can be submitted. *See* SA, Ex. F. Notice of any changes to the Final Approval Hearing and notice of entry of final judgment will be provided through the Settlement Website. SA ¶¶ 53, 89.d. The Settlement Website will contain the Settlement Agreement, the Long Form Notice, the Claim Form, the Preliminary Approval Order, the operative complaint, and other important documents, or that the Court orders posted. The Settlement Website will include a toll-free telephone number and mailing address through which the Settlement Administrator can be contacted, and will allow for the electronic submission of Requests for Exclusion. *Id.*

### D.    The Proposed Settlement Administrator

Class Counsel solicited competing bids from several qualified settlement administrators. Joint Decl. ¶ 23. Through this competitive bidding process, Class

1    Counsel selected and propose that the Court appoint, Angeion Group, as the Settlement

2    Administrator. Angeion Group has agreed the total amount of the Administrative

3    Expenses will not exceed $1,500,000. *See* Declaration of Steven Weisbrot ¶ 50.

4         **E.**      **Opt-Out and Objection Procedures**

5         Any Settlement Class Member may submit a Request for Exclusion from the

6    Settlement at any time during the Opt-Out Period. To be valid, the Request for

7    Exclusion must be (i) submitted electronically on the Settlement Website, or (ii)

8    postmarked or received by the Settlement Administrator on or before the end of the

9    Opt-Out Period. SA ¶ 98. The Requests for Exclusion and Objection procedures are

10   detailed in plain language in the Long Form Notice, the Settlement Agreement, and on

11   the Settlement Website. SA ¶ 98-99. No Person may be excluded from the Settlement

12   Class through "mass" or "class" opt-outs. *Id.*

13        Pursuant to the Settlement Agreement, loanDepot has the sole discretion to

14   terminate the Settlement if Settlement Class Members exceeding a certain percentage

15   of the Settlement Class request exclusion from the Settlement Class.  SA ¶¶ 101-102.

16   The specific Opt-Out Threshold will be filed with the Court under seal through a

17   Confidential Supplemental Agreement. *See In re Anthem, Inc. Data Breach Litig*., 2017

18   WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) (finding information sealable to "prevent

19   third parties from utilizing [this provision] for the improper purpose of obstructing the

20   settlement and obtaining higher payouts."); *In re Online DVD-Rental Antitrust Litig.*,

21   779 F.3d 934, 948 (9th Cir. 2015) (similar); *Spann v. J.C. Penney Corp.*, 314 F.R.D.

22   312, 329 (C.D. Cal. 2016) (similar).

23        Any objectors who fail to object in the manner prescribed will be deemed to have

24   waived their objections and forever be barred from making any such objections in the

25   Action or in any other action or proceeding of any type or nature. SA ¶ 99. In addition,

26   any Settlement Class Members who object must provide their availability and make

27   themselves available for deposition regarding the grounds for the objection. *Id.*

28   *///*

## IV.    ARGUMENT

### A.    The Legal Standards for Preliminary Approval

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Online DVD-Rental*, 779 F.3d at 944 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004))."[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). "The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47.

### B.    The Settlement Merits Preliminary Approval

#### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation

While Plaintiffs are confident in the merits of the case, Plaintiffs understand loanDepot lacks insurance and assets to satisfy a judgment in excess of the Settlement Fund amount without risking insolvency. Joint Decl. ¶ 7; *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992) ("a settling defendant's ability to pay may

---

12

be a proper factor to be considered in evaluating a proposed class action settlement");
*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (finding defendant's
financial condition predominant factor in determining fairness of class action
settlement); *Spann v. J.C. Penney Corporation*, 211 F. Supp. 3d 1244 (C.D. Cal. Sept.
30, 2016) (similar); *Alabsi v. Savoya, LLC*, No. 18-CV-06510, 2020 WL 587429, at
*6–7 (N.D. Cal. Feb. 6, 2020) (risk of non-payment, if plaintiffs prevails on merits,
supports preliminary approval); *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-
02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (settlement fair and
reasonable because defendants unable to provide higher settlement due to financial
insolvency); *Yamagata v. Reckitt Benckiser LLC*, No. 3:17-CV-03529, 2021 WL
5909206, at *3 (N.D. Cal. Oct. 28, 2021) (granting final approval of class action
settlement after court "considered a number of factors, including . . . the ability of
Defendant to withstand a greater judgment . . . ."); *Perks v. Activehours, Inc.*, No. 5:19-
CV-05543, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (defendant's inability
to pay larger settlement weighs in favor of finding relief adequate).

On the merits, loanDepot vigorously disputes Plaintiffs' claims, and the risk,
expense, and complexity of further litigation is significant. Joint Decl. ¶ 91. All class
actions involve a high level of risk, expense, and complexity, but the emerging and
evolving area of data breach litigation is especially risky and complex. *See Hashemi v.
Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb.
22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that
damages methodologies in data breach cases are largely untested and have yet to be
presented to a jury."); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E,
2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases
have experienced minimal success in moving for class certification."); *Gordon v.
Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, *1
(D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly
risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*,

1  No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach
2  litigation is complex and risky.").

3       Further, "[b]ecause of the difficulty of proving damages and causation, Plaintiffs
4  faced a substantial risk of losing at summary judgment or at trial," which makes further
5  litigation uncertain. *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018
6  WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and
7  finding in part that "[b]ecause of the difficulty of proving damages and causation,
8  Plaintiffs faced a substantial risk of losing at summary judgment or at trial."); *see also*
9  *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-
10  TWT, 2016 WL 6902351, at *1 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation .
11  . . has been a barrier to consumer plaintiffs' success" in data breach litigation).

12       Although Plaintiffs believe their liability case is strong and class certification is
13  warranted, it is uncertain whether the Court ultimately would grant certification, deny
14  Defendant's motion to dismiss and summary judgment motion, or find Plaintiffs and
15  Class Members are entitled to damages. Even if Plaintiffs certified a class, successfully
16  opposed a motion for summary judgment, subsequently proved liability at trial, and
17  prevailed on all appeals, they still would face the significant risk of recovering less than
18  trial damages (or nothing) for Class Members—the risk of loanDepot filing for
19  bankruptcy in the face of an enforceable judgment is real.

20            **2.**    **The Risk of Maintaining Class Action Status**

21       Certification would be hotly disputed and the outcome uncertain. A court's order
22  granting class certification is "inherently tentative" and "subject to revision," so
23  loanDepot could move for de-certification at any time before trial. *Coopers v. Lybrand*
24  *& Livesay*, 437 U.S. 463, 469 n.11 (1978) (superseded on other grounds).

25       A denial or reversal of class certification, like a loss on the merits, would
26  effectively extinguish any recovery by the Settlement Class. Even if Plaintiffs certified
27  a class, there would remain a risk of losing on summary judgement or at trial. If
28  Plaintiffs prevailed at trial, any judgment or order granting class certification could be

reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Class, likely for years. These risks warrant settlement.

### 3.    The Amount Offered in Settlement

Privacy damages are difficult to quantify, and many privacy class actions have settled for only non-monetary relief. *See Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.,* No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (final approval where injunctive relief class and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *Diaz v. Google LLC*, No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) (seeking final approval of non-monetary settlement of claims that Google exposed PHI and PII through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD, Dkt. 406 (N.D. Cal. Apr. 12, 2021) (granting final approval of 16 injunctive relief-only settlements in related privacy class actions alleging violation of child privacy protection laws by collecting and selling children's PII).

The non-reversionary Settlement Fund ($25 million) and total value of the Settlement (at least $86 million) relative to class size (16,924,007 persons) compare favorably to these and other class action settlements alleging violations of privacy and data security. *See In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592, Dkt. 322 (C.D. Cal May 10, 2019) (settlement fund of $22 million for 14.9 million class members whose personal information was exposed in data breach); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16

million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK (C.D. Cal. 2016) ($4.5 million settlement fund [$2 million non-reversionary; $2.5 million reversionary] for 435,000 class members in data breach case); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for approximately 6.4 million LinkedIn users).

The Settlement provides equivalent, if not greater, relief to the Settlement Class Members compared to other approved data breach settlements. The $25 million Settlement Fund equates to $1.48 per Settlement Class Member, which is comparable to other data breach settlements. *See, e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) ($0.05); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592, Dkt. 322 (C.D. Cal May 10, 2019) ($1.47); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) ($1.06); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($0.20); *In re Anthem, Inc. Data Breach Litigation*, No. 5:15-md-02617-LHK, (N.D. Cal. 2017) ($1.39). This calculation is *without* accounting for the Total Settlement Value (which includes the value of the Financial Monitoring and business practice changes).

### 4. The Extent of Discovery Completed and the Stage of Proceedings

Class Counsel obtained meaningful information through settlement negotiations, informal discovery, and confirmatory discovery, and were able to make an informed decision regarding the strengths and weaknesses of Plaintiffs' claims. Joint Decl. ¶¶ 19, 22. The information provided by loanDepot was appropriately targeted at information relevant to the Settlement. *Id.*; *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Manual for Complex Litigation (Fourth) § 13.12

(recognizing benefits of settlement are diminished if postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery and protracted litigation.

The stage of the proceedings allowed Plaintiffs to maximize recovery for the Settlement Class while providing immediate benefits. By aggressively pursuing an early resolution, Plaintiffs secured a settlement that compares favorably to other data breach actions without the risk and delay of protracted litigation.

### 5.   The Experience and Views of Counsel

Plaintiffs are represented by accomplished attorneys who are leaders in their field with extensive experience in prosecuting consumer class actions, including data breach actions. Joint Decl. ¶¶ 44-78. The Settlement provides Settlement Class Members with immediate, certain, and meaningful relief that directly addresses the issues they have experienced, or might experience, relating to the Data Breach. The language of the release is properly tailored to the Data Breach. SA ¶¶ 40-42, 60. Class Counsel endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class. Joint Decl. ¶¶ 7, 83, 92.

### 6.   The Response to the Settlement

No governmental agency is involved in this litigation, but the Attorney General of the United States and of each State will be notified of the proposed Settlement in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), and will have an opportunity to raise any concerns. SA ¶ 23. Because the Class has not yet been notified of the Settlement or given an opportunity to object, this factor is not ripe. Before the Final Approval Hearing, the Court will be able to review any objections or comments from Class Members and a full accounting of all requests for exclusion.

### 7.   The Settlement Is Non-Collusive

The Settlement was reached after nearly six months of hard-fought, arm's-length negotiations, including a full-day mediation with an experienced mediator and

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1   subsequent negotiations through the mediator, conducted by experienced attorneys.

2   Joint Decl. ¶ 10; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948

3   (formal mediation with experienced mediator weighs "in favor of a finding of non-

4   collusiveness"). The mediator, the Hon. Jay Gandhi, is a former United States

5   Magistrate Judge for the Central District of California. Judge Gandhi's declaration

6   attests to the hard-fought nature of the negotiation, his work challenging each side on

7   their positions and arguments, and how each side zealously advanced their respective

8   positions. Gandhi Decl. ¶¶ 5-6. Further, Class Counsel have significant experience

9   prosecuting data breach consumer class actions and are well-informed of the legal

10  claims and risks of this case. Joint Decl. ¶¶ 44-78, Exs. 1-5. After the Parties reached

11  agreement on material terms, the Parties conducted confirmatory discovery and

12  negotiated the terms of the Settlement, the related exhibits, and the Notice Plan. *Id.*

### 8.     The Proposed Notice Plan Is Appropriate

14        "The court must direct notice in a reasonable manner to all Class Members who

15  would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Rule 23 requires only the

16  'best notice that is practicable under the circumstances, including individual notice to

17  all members who can be identified through reasonable effort.'" *Briseno v. ConAgra*

18  *Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (emphasis omitted). Further,

19  "notice is adequate if it may be understood by the average class member." *Warner v.*

20  *Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX, 2016 WL 8578913, at

21  *14 (C.D. Cal. Dec. 2, 2016) (citation omitted).

22        Subject to Court approval, Plaintiffs selected Angeion Group as the Settlement

23  Administrator, and loanDepot does not oppose that selection. The Notice Plan includes

24  direct notice via email to all Class Members for whom loanDepot has an email address

25  for and direct notice via U.S. mail for all other Class Members. SA ¶¶ 91-97. The

26  Settlement Administrator will also email Class Members for whom it has an email

27  address and who do not respond to the mailed Notice. *Id.* In addition, Notice will be

28  disseminated through the Settlement Website. *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1   The Notice forms are clear, concise, and informative. *Id.*, Exs. D (Long Form
2   Notice) and F (Summary Notices). To make a claim, Class Members simply need to
3   visit the Settlement Website and complete the electronic form, or mail back the Claim
4   Form attached to the Summary Notice they receive in the mail. *Id.* ¶ 88.

### C.    Class Certification Is Appropriate

6   Parties seeking class certification for settlement purposes must satisfy the
7   requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620
8   (1997). "A court considering such a request should give the Rule 23 certification factors
9   'undiluted, even heightened, attention in the settlement context.'" *Sandoval v. Roadlink
10  USA Pac., Inc.*, No. EDCV 10-00973, 2011 WL 5443777, at *2 (C.D. Cal. Oct. 9, 2011)
11  (quoting *Amchem*, 521 U.S. at 621). All the requirements of Rule 23(a) must be met,
12  and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc.
13  v. Dukes*, 564 U.S. 338, 345 (2011).

### 1.    Rule 23(a) Is Satisfied

### a.    The Class Is Sufficiently Numerous

16  Rule 23(a)(1) requires "the class is so numerous that joinder of all members is
17  impracticable." Fed. R. Civ. P. 23(a). Joinder of all approximately 16.9 million Class
18  Members would be impractical. The Class is sufficiently numerous.

### b.    There Are Common Questions of Law and Fact

20  The commonality requirement is satisfied if "there are questions of law or fact
21  common to the class." Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that
22  every question of law or fact must be common to the class; all that Rule 23(a)(2)
23  requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs.,
24  Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S.Ct. 53 (2014) (emphasis
25  and internal quotation marks omitted); *see Mazza v. Am. Honda Motor Co.*, 666 F.3d
26  581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden").

27  Common issues of law and fact affect Settlement Class Members uniformly and
28  satisfy the commonality requirement, including, among other things, whether

19

loanDepot's security practices prior to, and its response following, the Data Breach
were negligent. loanDepot's conduct with respect to all Settlement Class Members was
the same, and all Settlement Class Members received Defendant's notice of the Data
Breach. Thus, the commonality requirement of Rule 23(a) is satisfied.

### c. Class Representatives' Claims Are Typical

Rule 23(a)(3)'s typicality requirement is satisfied if the claims of the named class
representative arise "from the same course of conduct that gives rise to the claims of
unnamed Class Members to bring individual actions." *Thomas v. Baca*, 231 F.R.D.
397, 401 (C.D. Cal. 2005); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.
1998) ("[C]laims are 'typical' if they are reasonably co-extensive with those of absent
Class Members; they need not be substantially identical."). "The test of typicality is
whether other members have the same or similar injury, whether the action is based on
conduct, which is not unique to the named plaintiffs, and whether other Class Members
have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*,
657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiffs' and Class Members' claims arise from the same nucleus of facts—the
Data Breach—and are based on loanDepot's same allegedly deficient security
practices. Accordingly, Rule 23(a)'s typicality requirement is satisfied.

### d. Class Representatives and Class Counsel Adequately Represent Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative
parties will fairly and adequately protect the interests of the class," which requires that
the named Plaintiffs and their counsel not have conflicts of interest with the proposed
Class. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
895 F.3d 597, 607 (9th Cir. 2018). "Adequate representation depends on, among other
factors, an absence of antagonism between representatives and absentees, and a sharing
of interest between representatives and absentees." *Ellis*, 657 F.3d at 985; *Amchem*,
521 U.S. at 625-26 ("The adequacy inquiry . . . serves to uncover conflicts of interest

between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Plaintiffs and their counsel are adequate. Plaintiffs do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiffs and Class Counsel understand their responsibilities in serving as Class Representatives and Class Counsel have committed themselves to vigorously pursuing litigation on behalf of the putative class, and will continue to adequately represent the class through the Effective Date. Joint Decl. ¶¶ 44-81; Declarations of Plaintiffs ¶ 6.

## 2. Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) provides a class action can be maintained where: (1) the questions of law and fact common to members of the class *predominate* over any questions affecting only individuals; and (2) the class action mechanism is *superior* to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In the settlement context, the manageability criterion of Rule 23(b)(3)(D) does not apply. *Amchem*, 521 U.S. at 620.

**Predominance**: Every Class Member was affected by the same alleged Data Breach caused by the same allegedly deficient security practices and was sent notice of the Data Breach by loanDepot. Central common questions can be resolved for all members of the proposed Settlement Class in a single adjudication. "Common questions that yield common answers" and are "apt to drive the resolution of this case" predominate over any individual issues. *Dukes*, 564 U.S. at 345; *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

**Superiority:** A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against loanDepot. *See Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the

1  plaintiffs would have no realistic day in court if a class action were not available.").

2  Resolution through individual actions is impracticable—the amount in dispute for

3  individual class members is too small, the technical issues involved are too complex,

4  and the required expert testimony and document review too costly. *Just Film, Inc. v.*

5  *Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

6

7  **3.      The Court Should Appoint Plaintiffs as Class Representatives and Maintain Its Prior Lead Counsel Appointment**

8          This Settlement would not have been possible had Plaintiffs not stepped forward

9  to represent the interests of the Settlement Class. These proposed Class Representatives

10  consistently have been involved in the litigation, providing valuable insight and useful

11  facts that contributed to the Consolidated Complaint, allowing Class Counsel to

12  effectively litigate this action, perform confirmatory discovery, and negotiate this

13  Settlement. Joint Decl. ¶¶ 79-80, Ex. 6. Plaintiffs communicated with Class Counsel

14  regarding various issues pertaining to this case and will continue to do so until the

15  Settlement is approved, and its administration completed. *Id.*

16          Class Counsel are qualified and experienced in conducting class action litigation,

17  especially cases involving consumer protection. *Id*. ¶¶44-78, Exs. 1-5 (firm resumes).

18  Class Counsel vigorously prosecuted this action and will continue to do so through

19  final approval. *Id*. ¶¶ 44-81; *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D.

20  Cal. 2002) (evaluating adequacy of representation, court may examine "the attorneys'

21  professional qualifications, skill, experience, and resources . . . [and] the attorneys'

22  demonstrated performance in the suit itself"); *Barbosa v. Cargill Meat Sols. Corp.*, 297

23  F.R.D. 431, 443 (E.D. Cal. 2013) ("There is no challenge to the competency of the

24  Class Counsel, and the Court finds that Plaintiffs are represented by experienced and

25  competent counsel who have litigated numerous class action cases.").

26          The Court previously appointed proposed Class Counsel as Interim Co-Lead

27  Class Counsel. *See* Dkts. 53, 55. Considering their work in this Action, their collective

28  expertise and experience in handling similar actions, and the resources they committed

to representing the Class, they should be appointed Class Counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

Dated: December 2, 2024                                   Respectfully Submitted,

*/s/ Daniel S. Robinson*                                    */s/ Abbas Kazerounian*
Daniel S. Robinson                                        Abbas Kazerounian
Michael W. Olson                                          Mona Amini
ROBINSON CALCAGNIE, INC.                                  KAZEROUNI LAW GROUP, APC
19 Corporate Plaza Drive                                  245 Fischer Avenue, Suite D1
Newport Beach, California                                 Costa Mesa, California 92626
(949) 720-1288; Fax: (949) 720-1292                       (800) 400-6808; Fax: (800) 520-5523
drobinson@robinsonfirm.com                                ak@kazlg.com
molson@robinsonfirm.com                                   mona@kazlg.com

*/s/ Stephen G. Larson*                                    */s/ Gary M. Klinger*
Stephen G. Larson                                         Gary M. Klinger
LARSON, LLP                                               MILBERG COLEMAN BRYSON
555 S. Flower Street, 30th Floor                          PHILLIPS GROSSMAN, PLLC
Los Angeles, CA 90071                                     227 W. Monroe Street, Suite 2100
(213) 436-4864; Fax: (213) 623-2000                       Chicago, IL 60606
slarson@larsonllp.com                                     (866) 252-0878
                                                          gklinger@milberg.com
*/s/ Tina Wolfson*
Tina Wolfson
Deborah De Villa
AHDOOT & WOLFSON, PC
2600 W Olive Ave, Ste 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
ddevilla@ahdootwolfson.com


***Interim Co-Lead Counsel for Plaintiffs***

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief contains 6,978 words, which complies with L.R. 11-6-1.

Dated: December 2, 2024                  */s/ Daniel S. Robinson*
                                          Daniel S. Robinson

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: December 2, 2024                          */s/ Daniel S. Robinson*
                                                  Daniel S. Robinson

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT