**ROBINSON CALCAGNIE, INC.**
Daniel S. Robinson (SBN 244245)
*drobinson@robinsonfirm.com*
Michael W. Olson (SBN 312857)
*molson@robinsonfirm.com*
19 Corporate Plaza Drive
Newport Beach, California
(949) 720-1288; Fax: (949) 720-1292

**LARSON, LLP**
Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN 249203)
*ak@kazlg.com*
Mona Amini (SBN 296829)
*mona@kazlg.com*
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger (*Pro Hac Vice*)
*gklinger@milberg.com*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re loanDepot Data Breach Litigation*<br><br>This Document Relates to: All Cases | Case No.: 8:24-cv-00136-DOC-JDEx<br><br>Assigned for All Purposes to:<br>Courtroom 10A; Hon. David O. Carter<br><br>**DECLARATION OF CINDY COHN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Filed Concurrently with Motion, Declarations and [Proposed] Order]**<br><br>Date:        January 13, 2025<br>Time:        8:30 a.m.<br>Courtroom:  10A |

I, Cindy Cohn, declare as follows:

1. I am the Executive Director and President of the Electronic Frontier Foundation, a U.S. 501(c)(3) nonprofit organization based in San Francisco, CA. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The facts herein stated are true of my own personal knowledge and if called to testify to such facts, I could and would do so competently.

2. Founded in 1990, Electronic Frontier Foundation ("EFF") is the oldest and largest nonprofit organization defending civil liberties in the digital world. Extensive information about EFF, including our Annual Reports and financial statements, is available at https://eff.org/about. EFF regularly receives the highest rating from Charity Navigator, an independent evaluator of nonprofit organizations.

3. As part of its mission, EFF engages in various projects relating to improving the privacy and protecting the security of internet users, using a variety of litigation, advocacy, and technological tools. All our projects are aimed at advancing our mission to ensure that technology supports freedom, justice, and innovation for all people of the world.

4. EFF coordinates its work on consumer privacy and security through cross-team working groups, consisting of lawyers, technologists, activists, and researchers who work together both to formulate our positions and strategies and to do the work of pushing them forward.

5. EFF has long recognized that, despite the benefits that users may gain, personal data in the hands of businesses can also harm users. Users are often unaware of how their data is collected, stored, analyzed, shared, sold, and leaked by the companies they entrust with it. They are also ill-prepared to ensure that the company is working to keep it safe. Once user data is collected by companies, the risks are many. Companies can monetize it in unexpected ways, including by selling, sharing, manipulating it, and making inferences based upon it which can create risks for users. Beyond that, police can seize it; criminals can steal it; and employees can misuse it.

6. Even when users are aware of these risks, they often have few, if any, ways to avoid them or obtain remedies when these risks come to fruition.

7. For many years, EFF has advocated for data privacy. We have urged companies to adopt policies that respect data privacy. We also have advocated for data privacy laws regarding various business sectors (e.g., broadband), forms of personal information (e.g., biometrics), and privacy tools (e.g., "right to know" laws). We have participated in litigation, as both *amicus curiae* and as counsel, in data privacy cases. We have developed privacy protecting tools, like Privacy Badger, which helps users avoid tracking on websites.

8. Similarly, EFF has long worked for data security, including promoting strong encryption, as well as using and promoting legal strategies to incentivize strong security for data. We also build tools that help users better protect their security. We advocate for and seek accountability for poor security choices by companies, including choosing to develop or deploy systems that make data leaks and stealing easier.

9. We educate the public through blog posts and inform policy makers through presentations. We develop guides for users to better protect their privacy and work to provide the information users need to choose the best tools for their needs. We lobby regarding legislation and regulations at the federal level and in states across the country and around the world. We work with various coalitions comprising scores of organizations. We are one of the few nonprofit organizations with technologists directly involved in these issues and are often looked to by others for our technical expertise. Our work on consumer privacy is included in our overall privacy work (https://www.eff.org/issues/privacy) and also spread across multiple sub-issues, including medical privacy (https://www.eff.org/issues/medical-privacy), location privacy (https://www.eff.org/issues/location-privacy), and online behavioral tracking (https://www.eff.org/issues/online-behavioral-tracking), along with cybersecurity legislation (https://www.eff.org/issues/cyber-security-legislation). While we do not publish summaries every year, a summary of our work in 2023 on consumer privacy can

be found at https://www.eff.org/deeplinks/2023/12/first-lets-talk-about-consumer-privacy-2023-year-review.

10. I understand that counsel for the parties in this litigation are recommending to the Court that EFF receive a portion of any residual funds in the proposed Settlement before the Court to support our work and directly benefit users' privacy and security. Any funds paid to EFF through the proposed Settlement will be used to further this work.

11. Please note that while EFF is a strong advocate for consumer privacy and security, EFF takes no position on the merits of this specific litigation or the fairness or reasonableness of the Settlement currently before this Court.

12. Courts in several cases have determined that EFF is an appropriate *cy pres* recipient. For example, in *Caligiuri v. Symantec*, the Eight Circuit Court of Appeals recognized that EFF was a "global nonprofit whose mission is to defend consumer civil liberties in the digital world, including digital consumer protection," and therefore an appropriate *cy pres* recipient in a consumer class action case. 855 F.3d 860, 867 (8th Cir. 2017) (quoting *Khoday v. Symantec Corp*, 2016 WL 1637039 (D. Minn. 2016)).

13. Any approved *cy pres* funds awarded to EFF will be dedicated to projects relating to improving consumer privacy and data security when using digital tools.

14. Further, funds already allocated or dedicated by EFF to projects relating to consumer privacy and data security will not be reduced as a result of any *cy pres* award in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of December 2024.

*Cindy Cohn*