**ROBINSON CALCAGNIE, INC.**
Daniel S. Robinson (SBN 244245)
*drobinson@robinsonfirm.com*
Michael W. Olson (SBN 312857)
*molson@robinsonfirm.com*
19 Corporate Plaza Drive
Newport Beach, California
(949) 720-1288; Fax: (949) 720-1292

**LARSON, LLP**
Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN 249203)
*ak@kazlg.com*
Mona Amini (SBN 296829)
*mona@kazlg.com*
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger (*Pro Hac Vice*)
*gklinger@milberg.com*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878

*Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re loanDepot Data Breach Litigation* | Case No.: 8:24-cv-00136-DOC-JDEx |
| This Document Relates to: All Cases | Assigned for All Purposes to: Courtroom 10A, Hon. David O. Carter **JOINT DECLARATION OF DANIEL S. ROBINSON, TINA WOLFSON, ABBAS KAZEROUNIAN, STEPHEN G. LARSON, AND GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** [Filed Concurrently with Motion, Declaration and [Proposed] Order] Date: August 18, 2025 Time: 8:30 a.m. Courtroom: 10A |

We, Daniel S. Robinson, Tina Wolfson, Abbas Kazerounian, Stephen G. Larson, and Gary M. Klinger, declare as follows:

1.     I, Daniel S. Robinson, am an attorney duly licensed to practice before all courts of the State of California as well as other federal courts across the country. I am a partner of the law firm Robinson Calcagnie, Inc. ("RC") and I have been appointed to leadership positions in numerous state and federal courts, including in other data breach cases and in complex and multi-district consumer class action litigation. Attached as **Exhibit 1** is a true and correct copy of RC's firm resume, which includes the curriculum vitae of Daniel S. Robinson.

2.     I, Tina Wolfson, am an attorney duly licensed to practice before all courts of the State of California as well as other federal courts across the country. I am a partner of the law firm Ahdoot & Wolfson, PC ("AW") and I have been appointed to leadership positions in numerous state and federal courts, including in other data breach cases and in complex and multi-district consumer class action litigation. Attached as **Exhibit 2** is a true and correct copy of AW's firm resume.

3.     I, Abbas Kazerounian, am an attorney duly licensed to practice before all courts of the State of California as well as other state and federal courts across the country. I am a partner of the law firm Kazerouni Law Group, APC ("KLG"), and I have been appointed to leadership positions in numerous state and federal courts, including in other data breach cases and in complex and multi-district consumer class action litigation. Attached as **Exhibit 3** is a true and correct copy of KLG's firm resume, which includes the curriculum vitae of Abbas Kazerounian.

4.     I, Stephen G. Larson, am an attorney duly licensed to practice before all courts of the State of California as well as other state and federal courts across the country. I am a partner of the law firm Larson, LLP ("Larson"), and I have been appointed to leadership positions in numerous state and federal courts, including in other data breach cases and in complex and multi-district consumer class action litigation. Attached as **Exhibit 4** is a true and correct copy of Larson's firm resume,

which includes the curriculum vitae of Stephen G. Larson.

5.    I, Gary M. Klinger, am an attorney duly licensed to practice before all courts of the State of Illinois as well as other state and federal courts across the country. I am a partner of the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), and I have been appointed to leadership positions in numerous state and federal courts, including in other data breach cases and in complex and multi-district product consumer class action litigation. Attached as **Exhibit 5** is a true and correct copy of Milberg's firm resume.

6.    We are Class Counsel for Plaintiffs in the above-captioned case, and have personal knowledge of the matters stated herein and, if called upon, we could and would competently testify regarding those matters. We submit this Joint Declaration in support of Plaintiffs' Motion for Award of Attorney's Fees and Costs, and Service Awards.

7.    As discussed below, we continue to believe the proposed settlement provides a substantial recovery in a case presenting novel and complex issues and substantial risks, and is a fair, reasonable, and adequate result for the Class.

8.    We, along with other counsel, vigorously and zealously represented the interests of the proposed Settlement Class from the inception of this litigation until the present. Defendant loanDepot, Inc. ("loanDepot" or "Defendant") is an Irvine, California-based nonbank holding company and the nation's fifth largest retail mortgage lender, funding more than 27,000 consumer mortgages per month. loanDepot was represented by one of the largest and most preeminent law firms in the country who vigorously defended against Plaintiffs' claims throughout the course of this Litigation.

9.    The proposed Settlement is the result of good faith, arm's length settlement negotiations, conducted during a full-day in-person mediation session before the Honorable Jay C. Gandhi (Ret.) of JAMS on June 6, 2024, which resulted in the Parties ultimately agreeing to a settlement in principle on June 14, 2024. The

1  Settlement is also a product of extensive subsequent negotiation efforts between

2  counsel to finalize the Settlement Agreement.

3      10.    Pursuant to the Settlement, Defendant will pay $25 million into a non-

4  reversionary common Settlement Fund that will be used to make direct cash payments

5  to Settlement Class Members, including additional payments to California residents for

6  their claims under the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.150,

7  *et seq.* ("CCPA"), to provide Financial Monitoring and Identity Theft Insurance

8  Services to Participating Settlement Class Members, to cover Administrative

9  Expenses, to pay Service Awards to Class Representatives approved by the Court, and

10  to pay any Fee Award and Costs approved by the Court. The Settlement includes

11  remedial efforts and business practices changes taken by loanDepot following the Data

12  Breach, which are estimated to have cost loanDepot $9,341,000.00, which will benefit

13  all Settlement Class Members irrespective of whether they file a claim.

14      11.    This proposed Settlement provides an adequate recovery in a case

15  presenting novel and complex issues and substantial risks, and presents a fair,

16  reasonable, and adequate result for the Class. While Plaintiffs are confident they would

17  succeed if this case proceeded to trial, and they would be able to prove that loanDepot's

18  inadequate security was the cause of the Data Breach and of Plaintiffs' alleged

19  damages, Plaintiffs lack confidence that loanDepot would be able to pay more than

20  they are paying in this Settlement after analyzing loanDepot's financial condition and

21  determining it has a serious risk of insolvency.

22      12.    As of March 19, 2025, a total of 48,957 claims have been received of

23  which 47,340 have elected to receive Credit Monitoring. Based on the current claim

24  numbers (approximately 0.29%) and taking into account the monetary benefits and

25  business practice changes that loanDepot has implemented in response to this

26  litigation, our current estimation of the total value of the settlement benefits offered to

27  the Proposed Class is already in excess of $48_ million, and will likely increase before

28

JOINT DECLARATION ISO OF MOTION FOR FEES, COSTS, AND SERVICE AWARDS

the May 27, 2025 Claims Deadline.[1] Updated numbers will be provided before the Final Fairness Hearing.

13. Through the Motion for Award of Attorneys' Fees, Costs, and Service Awards, we are respectfully requesting an award of $7,500,000.00 in attorneys' fees and $57,346.40 in costs, as well as service awards of $2,500.00 to each of the 20 Class Representatives in accordance with the terms of the preliminarily approved Settlement between Plaintiffs and loanDepot.

14. Over the more than two years of heavily contested litigation, our firms and other counsel devoted 3,976.5 total hours and incurred a collective lodestar of $3,296,025.80 to secure the relief for the Class.

15. The requested attorneys' fees and costs amount to 15.3% of the current Settlement Value of $48,961,012.20, as of March 19, 2025. As stated, we will update the Court before the Final Approval Hearing.

16. As explained below, given the amount of the Settlement Fund, the provision of two years of Financial Monitoring and Insurance Services to Participating Settlement Class Members, and the improvements to Defendant's data security practices that resulted from this Action, Plaintiffs and proposed Class Counsel's current estimation of the total value of the Settlement Benefits made available to the Settlement Class is in excess of $48 million.

## Litigation Background

17. As detailed in Plaintiffs' Consolidated Class Action Complaint (Dkt. 69) filed on June 3, 2024, loanDepot announced on or around January 8, 2024, that between January 3-5, 2024, an unauthorized third party gained access to loanDepot's systems

---

[1] The Financial Monitoring is valued at $12.95 per month for each Participating Settlement Class Member receiving that benefit. For the two-year term (24 months), therefore, a single subscription is valued at $310.80. Based on the March 19, 2025 claims figures, the value of this benefit to the Settlement Class is at least $14,620,012.20, considering the 47,340 Credit Monitoring claims and after deducting the cost of this benefit.

during the Data Breach, including certain sensitive PII stored in those systems. The PII included Plaintiffs' and putative class members' names, addresses, email addresses, financial account numbers, Social Security numbers, phone numbers, and dates of birth.

18.    The litigation arose after loanDepot issued announcements or press releases through its website, submitted filings to the U.S. Securities and Exchange Commission (SEC), and began sending notice letters in early 2024 alerting Plaintiffs and the Settlement Class that the personal information of approximately 16.9 million customers was allegedly accessed and exfiltrated by unauthorized parties from loanDepot's systems in a cyber incident.

19.    Following the Data Breach announcement, 20 putative class action complaints were filed against loanDepot. The vast majority of Plaintiffs' counsel in these cases self-organized and cooperated, ultimately proposing that the Court appoint Interim Class Counsel in accordance with Rule 23(g). On April 17, 2024, after a hearing on Plaintiffs' motion to consolidate and appoint lead counsel, the Court appointed Daniel S. Robinson of RC, Tina Wolfson of AW, Abbas Kazerounian of KLG, Stephen G. Larson of Larson, and Gary M. Klinger of Milberg as Interim Co-Lead Counsel. Dkts. 53, 55.

## Class Representative Vetting

20.    Leading up to and immediately after the leadership appointment, we collaborated among all Plaintiffs' counsel to make sure that all Plaintiffs preserved relevant documents, and to vet all prospective Plaintiffs for a consolidated complaint. In the months leading up to the Court-imposed deadline to file the consolidated complaint, we worked cooperatively and efficiently with other Plaintiffs' counsel to review underlying complaints, documents, and questionnaires, and conduct telephonic vetting interviews of the potential class representatives. The leading candidates were then further screened and vetted, until the proposed Class Representatives were ultimately selected.

**The Pleadings**

21.     On June 3, 2024, Plaintiffs filed a Consolidated Class Action Complaint against loanDepot alleging claims for (1) negligence, (2) breach of express contract, (3) breach of implied contract, (4) invasion of privacy, (5) violations of the CCPA, (6) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")*,* (7) violations of the California Consumer Records Act, Cal. Civ. Code §1798.80, *et seq.* ("CCRA"), (8) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, (9) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, (10) violations of the New York Deceptive Trade Practices Act, New York Gen. Bus. Law § 349, (11) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*, (12) violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521, *et seq.*, (13) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*, (14) violation of the Maine Uniform Deceptive Trade Practices Act, 10 Me. Rev. Stat. § 1212, *et seq.*, (15) violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. An. §75-1, 1, *et seq*., and (16) declaratory and injunctive relief. Dkt. 69.

**Settlement Negotiations and Mediation**

22.     The Parties began extensive arm's-length settlement negotiations and on June 6, 2024, participated in a full-day mediation session before JAMS mediator Judge Gandhi.

23.     In advance of the mediation, the Parties voluntarily exchanged information, including a substantial document production from loanDepot, and prepared and exchanged extensive mediation briefs. Although the Parties were unsuccessful in reaching a resolution at mediation, they continued to engage in arms-length discussions through Judge Gandhi, which ultimately resulted in an agreement on the general contours of a settlement.

24.     On June 26, 2024, the Parties entered a Joint Stipulation to Extend

JOINT DECLARATION ISO OF MOTION FOR FEES, COSTS, AND SERVICE AWARDS

Deadline to Respond to the Complaint, in which they informed the Court of the settlement in principle and requested 90 days for the parties to engage in confirmatory discovery, enter into a formal Settlement Agreement, and file a motion for preliminary approval.

25. Since then, the Parties worked on and exchanged multiple drafts of the Settlement Agreement and related documents and focused on resolving disagreements concerning the terms of the Settlement Agreement.

26. Plaintiffs also received confirmatory discovery from loanDepot concerning the cause and scope of the Data Breach, loanDepot's notification thereof, loanDepot's remedial efforts following the Data Breach, and loanDepot financial condition, in the form of a Federal Rule of Civil Procedure 30(b)(6) deposition and written discovery.

27. Further, Plaintiffs secured and compared multiple bids from competing settlement administrators and financial monitoring companies and worked through the process to select the administrator and product best suited for this Settlement. As a result, Plaintiffs maximized the amount that would be available to the Settlement Class for payment of claims by minimizing Administrative Expenses while confirming that the administration and Notice Plan complied with all rules and due process requirements.

28. While the Parties' settlement negotiations were at all times hard fought and professional, they were marked by significant factual and legal disputes impacting the value of the case.

29. At all times the negotiations were at arm's-length and free of collusion. Attorneys' fees, litigation costs and expenses, and Service Awards for the named Plaintiffs were not discussed until after the class relief was agreed to in principle, with the Parties only negotiating during the mediation the total amount of the non-reversionary Settlement Fund from which any potential Fee Award and Costs or Service Awards will be paid. After reimbursement of costs and payment of fees to

Plaintiffs' Counsel, Class Counsel have agreed to divide any attorney fee award evenly amongst themselves, after reimbursing the fees and costs of other plaintiffs' counsel that are compensable under the Time and Expense Billing Protocol entered by the Court as part of Case Management Order No. 1.

### Settlement Benefits

30.    The proposed Settlement provides for a non-reversionary cash Settlement Fund of $25 million to provide meaningful relief, including cash payments to Settlement Class Members. The Settlement Fund shall be used by the Settlement Administrator to pay for (i) all Administrative Expenses; (ii) any Taxes; (iii) the cost of the Financial Monitoring and Insurance Services; (iv) any Monetary Payments, Out-of-Pocket Costs Payments, and California Subclass Payments; (v) any court-approved Service Awards; (vi) any court-approved attorneys' fees and costs; and (vii) any other Settlement Benefits.

31.    Each Participating Settlement Class Member who submits a valid claim is eligible to receive two years of Financial Monitoring and Identity Theft Protection.

32.    Each Participating Settlement Class Member is eligible to receive a cash payment of up to $5,000 for reimbursement of Out-of-Pocket Costs that are fairly traceable to the Data Breach. Claims for Out-of-Pocket Costs must relate to any identity theft and fraud fairly traceable to the alleged Data Breach, incurred on or after January 3, 2024, and be supported by Reasonable Documentation.

33.    Each Participating Settlement Class Member will receive a payment from the Settlement Fund for the alleged damages they suffered as a result of having their PII disclosed during the alleged Data Breach. The payment amount will depend on the participation rate for the Settlement and the amount will be each Participating Settlement Class Member's pro rata share of the remaining Net Settlement Fund, after all other Settlement Benefits have been paid for out of the Remaining Net Settlement Fund, including payment for all claims for Financial Monitoring, Out-of-Pocket Costs Payments, and California Subclass Payments.

34.    In addition, each Participating Settlement Class Member that is part of the California Subclass will receive a separate payment to compensate them for the statutory damages available under the CCPA (i.e., not less than $100 and not greater than $750 per consumer per incident) ("California Subclass Payment"). The California Subclass Payment amount will be each Participating Settlement Class Member of the California Subclass' pro rata share of the California Subclass Settlement Fund, which is $3,650,000. Under no circumstances shall the California Subclass Payment exceed $150 per member of the California Subclass.

35.    If the Monetary Payment to each Participating Settlement Class Member receiving that benefit or the California Subclass Payment to each Participating Settlement Class Member were to be less than Three Dollars and No Cents ($3.00), no Monetary Payments or California Subclass Payments will be made and the Parties will instead meet and confer on how to disperse the remaining Net Settlement Fund and present the plan to the Court for approval.

36.    To the extent any monies remain in the Net Settlement Fund or California Subclass Settlement Fund more than 180 days after distribution of the Settlement Payments, any funds remaining in the California Subclass Settlement Fund will be returned to the Net Settlement Fund and a subsequent Settlement Payment will be evenly made to all Participating Settlement Class Members with Approved Claims who cashed or deposited the initial payment they received, provided that the subsequent Settlement Payment amount is equal to or greater than three dollars and no cents ($3.00).

37.    Subject to Court approval, any remaining funds after that will be distributed to the Non-Profit Residual Recipient, the Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members.

38.    In addition to monetary relief, and as a result of this Action, loanDepot has agreed the Class Representatives, Class Counsel, and this litigation were a

motivating factor for certain remedial efforts and business practices changes taken by loanDepot following the Data Breach, including but not limited to enhancements in data management, identity protection, cloud security and threat detection capabilities, which are estimated to have cost loanDepot $9,341,000.00.

39.    The Settlement Value includes not only the $25 million non-reversionary Settlement Fund, but also the $9,341,000.00 million in remedial efforts and the retail value to the Settlement Class of the Financial Monitoring and Identity Theft Insurance Services, which is an additional $52,599,813.76 for every 1% of Class Members receiving that service (before deducting the cost of the service). Based on the March 19, 2025 claims figures, the value of this benefit to the Settlement Class is at least $14,620,012.20, considering the 47,340 Financial Monitoring claims and after deducting the cost of this benefit. Adding this amount to the value of the Settlement Fund ($25 million) and Defendants' expenditures for remedial measures ($9,341,000.00) results in a current Settlement Value of $48,961,012.20.

40.    Based on our experience and research and current numbers, including as set forth below, we believe we will achieve a claims rate around (1%), which is consistent with the claims rates in similar data breach settlements, including *In re: Banner Health Data Breach Litigation*, No. 16-cv-02696-SRB, ECF No. 195 at 1 (D. Ariz. 2019), in which the claims rate to date is greater than or equal to approximately 1.3%; *In re: Anthem, Inc. Data Breach Litigation*, No. 15-md-02617-LHK, ECF No. 1007 at 4 (N.D. Cal. 2017), in which the claims rate was approximately 1.7%; and *In re: Experian Data Breach Litigation*, No. 15-cv-01592AG, ECF No. 309 at 17 (C.D. Cal. 2018), in which the claims rate was greater than or equal to approximately 2.91%.

41.    We will update the Court prior to the final approval hearing on the status of the claims rate and the actual Settlement Value.

**Preliminary Approval**

42.    On December 2, 2024, Class Counsel moved the Court to preliminarily approve the Settlement. Dkt. 83. The Court granted that motion on January 13, 2025.

Dkt. 88.

## Settlement Administrator

43.    The Court preliminarily appointed Angeion Group, to serve as the Settlement Administrator. Dkt. 88. Angeion Group is highly experienced in similar matters, well regarded, and is qualified to serve as Claims Administrator.

44.    Since the Preliminary Approval Order, Class Counsel worked alongside Angeion Group to ensure the notice and claims process has gone smoothly for Class Members. Class Counsel repeatedly audited the website to make sure it was correct and user-friendly, reviewed weekly reports from, and conferred with, Angeion Group about the progress of the notice and claims process, and responded to myriad inquiries from Class Members that came into their respective offices, as well as other counsel's offices.

## Proposed Class Representative

45.    The Court preliminarily approved the 20 named Plaintiffs to serve as Class Representatives: Alphonso Woods, David Ware, Deborah McPhail, Josh Krieghauser, Daroya Isaiah, Joshua Beller, Maurice Beckwith, Robert Lash, Ryan Azinger, Lorenz Praefcke, Varun Singh, Debra Coe, Loretta Montgomery, Vidal Hernandez, Tracy Brown, Branislav Sasic, Jessica Schuler, Kyle Nunnelly, Nailah Ricco-Brown, and Matthew McFall. Dkt. 88.

46.    Throughout the Action and since preliminary approval, the Class Representatives diligently represented and pursued the interests of the Class. The Class Representatives provided extensive information regarding the harms they suffered as a result of the Data Breach, including providing all necessary paperwork and documents. The Class Representatives also remained in contact with Plaintiffs' Counsel throughout the litigation, promptly responding to our inquiries for further information and communicating with Plaintiffs' Counsel to keep up to date on the status of the Litigation.

47.    Attached as Exhibit 6 to the Joint Declaration in Support of the Motion

for Preliminary Approval (Dkt. 83-1) are the combined declarations from each of the Class Representatives detailing their efforts throughout the course of this litigation, how their efforts benefited the Class, and affirming their support for the Settlement. Similar and greater amounts for class representatives have been awarded in other data breach cases.

### The Settlement is in the Best Interest of the Settlement Class

48.   We believe the Settlement Agreement is fair, reasonable, and adequate; the product of substantial investigation, litigation and arm's-length negotiation; and, most importantly, is in the best interests of Plaintiffs and putative Class Members. Despite our strong belief in the merits of this litigation and likelihood of success at trial, we nonetheless believe that the benefits to Plaintiffs and the putative Class pursuant to the agreed upon terms substantially outweigh the risks of continuing to litigate the claims—namely, the delay that would result before Plaintiffs and putative Class Members receive any benefits should the action proceed to trial; the possibility of a negative outcome at trial; and the possibility of a negative outcome post-trial should Defendants appeal a judgment in favor of the putative Class. This Settlement provides significant benefits now and is in the best interest of all putative Class Members.

49.   The size of the Settlement Fund here ($25 million), and the total value of the Settlement (likely in excess of $48 million), in relation to the size of the Settlement Class (16,924,007 Class Members), compare favorably to these and other class action settlements alleging violations of privacy and security. *See e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600

1   RGK (C.D. Cal. 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5

2   million reversionary) for 435,000 class members in data breach case); *In re Linkedin*

3   *User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25

4   million for approximately 6.4 million LinkedIn users).

5       50.   Altogether, the value of the Settlement is presently valued in excess of

6   $48 million, including the value of the $25 million Settlement Fund, the $9.3 million

7   in remedial measures agreed to by loanDepot, and the additional value to Class

8   Members presented by the Financial Monitoring and Identity Theft Insurance Services,

9   which are valued at $12.95 per month.

10      51.   Currently, the value of the Financial Monitoring and Identity Theft

11  Insurance Services is valued at $14,620,012.20 (which excludes the cost of providing

12  such services). There are presently 47,340 claims for Credit Monitoring and Identity

13  Theft Insurance Services, which has a retail value of $12.95 per month.

14      52.   The Claims Deadline is May 27, 2025. Prior to the Final Approval

15  Hearing, Class Counsel and the Settlement Administrator will provide updated figures

16  to inform the Court of the current claims rate and exact Settlement Value.

17      **Class Counsel Reviewed, Audited, and Reduced the Attorneys' Fees**

18      53.   Plaintiffs' Counsel maintained this time in contemporaneous, detailed

19  time records billed in 6-minute increments. The hours expended by each firm included

20  in the present request are detailed in this Declaration and have been reviewed in detail

21  by Class Counsel.

22      54.   Plaintiffs' counsel whose hours and expenses are included in these figures

23  submitted monthly billing statements regarding time spent on this litigation.

24      55.   Class Counsel reviewed all of the time submissions, audited them, and

25  reduced hours that appeared duplicative, excessive, or unnecessary, and eliminated de

26  minimis billers (under five hours). As such, the number of hours sought by Plaintiffs'

27  counsel is reasonable.

28      56.   Additionally, the lodestar hours presented herein do not include additional

14

1    work which will be required. Class Counsel must still: (1) prepare for and attend the

2    final approval hearing, including the research and drafting motion and any reply papers

3    and responses to objections; (2) respond to any inquiries from Class Members; (3)

4    oversee the Settlement through final approval of distribution of the common fund; (4)

5    oversee the claims administration process, including addressing any claim review

6    issues; and (5) handle any appeals. (*Id.*) Class Counsel intend to submit additional

7    lodestar information prior to the Final Approval Hearing.

8                    **The Audited Attorneys' Fees are Reasonable**

9          57.    Following these detailed and extensive reviews, audits, and reductions of

10   time, the result is a reduction of the total number of hours to 3,976.5. This reduction

11   results in a total lodestar for all firms of $3,296,025.80. This is a requested multiplier

12   of 2.28, which is commensurate with the substantial work and risk Plaintiffs' Counsel

13   took in bringing this action and bringing it to a timely and efficient resolution.

14         58.    The attorneys' fees and expenses that Class Counsel are submitting for

15   the Court's consideration include time devoted to the following:

16         a.    engaging in extensive efforts to develop strategic plans;

17         b.    vetting potential class representatives;

18         c.    self-organizing and consolidating all cases before this Court;

19         d.    extensively researching and filing the consolidated complaint;

20         e.    amending the Complaint in response to arguments raised by Defendants

21               in their motions to dismiss and strike the consolidated complaint;

22         f.    undertaking substantial investigation of the Data Breach and the corporate

23               structure of Defendants;

24         g.    informally exchanging information prior to mediation and preparing and

25               exchanging extensive mediation briefs;

26         h.    attending a private mediation experienced mediator Daniel Garrie, Esq.;

27         i.    negotiating and entering into a Memorandum of Understanding;

28         j.    conducting confirmatory discovery;

k.     negotiating the details of the Settlement Agreement for nearly one year resolving several areas of dispute that had arisen over the course of negotiations;

l.     securing preliminary approval of the Settlement; and

m.     monitoring the administration of the Settlement and responding to any inquiries from Class Members after Class Notice was disseminated.

59.     Below is a billing summary of the firms that were involved in the litigation, as well as information concerning attorneys and support staff that worked on the case or otherwise appeared before the Court at the consolidation hearing:

| Ahdoot & Wolfson PC | | | | |
|---|---|---|---|---|
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Wolfson, Tina | Partner | 1,200 | 93.7 | $     112,440.00 |
| Ahdoot, Robert | Partner | 1,200 | 1.0 | $       1,200.00 |
| Maya, Theodore | Partner | 1,100 | 0.3 | $         330.00 |
| Kelston, Henry | Partner | 1,100 | 1.3 | $       1,430.00 |
| Ferich, Andrew | Partner | 850 | 350.9 | $     298,265.00 |
| Brown, Alyssa | Associate | 800 | 149.2 | $     119,360.00 |
| De Villa, Deborah | Associate | 750 | 5.3 | $       3,975.00 |
| Carlynne Wagner | Associate | 500 | 2.7 | $       1,350.00 |
| Heidi Liivamagi | Paralegal | 350 | 1.1 | $         385.00 |
| Laura Lowe | Paralegal | 350 | 57.0 | $      19,950.00 |
| Michelle Montecalvo | Paralegal | 350 | 1.0 | $         350.00 |
| Carlos Armijo | Paralegal | 350 | 0.5 | $         175.00 |
| Catherine Santos | Legal Assistant | 150 | 19.8 | $       2,970.00 |
|  |  |  | **683.8** | **$     562,180.00** |
| Kazerouni Law Group, APC | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Kazerounian, Abbas | Partner | 1,025 | 310.2 | $     317,955.00 |
| Amini, Mona | Partner | 725 | 289.7 | $     210,032.50 |
| Amini, Mona | Associate | 450 | 14.7 | $       6,615.00 |
|  |  |  | **614.6** | **$     534,602.50** |
| Larson LLP | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Larson, Stephen G. | Partner | 1,450-1,700 | 127.4 | $     188,455.00 |
| Rigali, Paul A. | Partner | 1,000-1,100 | 76.3 | $      77,730.00 |
| Ruyak, Robert F. | Partner | 1,250 | 12.3 | $      15,375.00 |
| Lahana, Daniel R. | Partner | 675-800 | 167.0 | $     117,812.50 |

JOINT DECLARATION ISO OF MOTION FOR FEES, COSTS, AND SERVICE AWARDS

| Yoon, Jina J. | Associate | 585-680 | 144.4 | $ | 85,376.50 |
|---|---|---|---|---|---|
| Bledsoe, Andrew S. | Associate | 605 | 12.8 | $ | 7,744.00 |
| Huber, Karen E. | Associate | 545 | 10.7 | $ | 5,831.50 |
| Neal, Jacqueline S. | Secretary | 250 | 2.9 | $ | 725.00 |
| Gooneratne, Anthony S. | Paralegal | 325 | 2.5 | $ | 812.50 |
| Delgado, Jesus X. | Paralegal | 250 | 17.0 | $ | 4,250.00 |
| Jordan, Clare | Paralegal | 250 | 4.0 | $ | 1,000.00 |
| | | | 577.3 | $ | 505,112.00 |

| Milberg Coleman Bryson Phillips Grossman PLLC | | | | | |
|---|---|---|---|---|---|
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** | |
| Klinger, Gary M. | Partner | 878/948 | 260.6 | $ | 230,731.80 |
| Wolf, Alexander | Associate | 878/948 | 145.0 | $ | 127,940.00 |
| Shimon, Roy | Partner | 878/948 | 80.4 | $ | 72,040.20 |
| Lietz, David | Partner | 1057 | 42.6 | $ | 45,028.20 |
| Weekes, Mariya | Partner | 878 | 40.9 | $ | 35,910.20 |
| Nelson, John | Partner | 538/839 | 60.1 | $ | 33,748.50 |
| Meyer, Dean | Associate | 437 | 3.3 | $ | 1,442.10 |
| Passanisi, Sandra | Paralegal | 239 | 11.5 | $ | 2,748.50 |
| Tyrrell, Ashley | Paralegal | 238/258 | 9.5 | $ | 2,274.30 |
| Sheflin, Heather | Paralegal | 238/258 | 6.6 | $ | 1,586.90 |
| Brennan, Kerry | Paralegal | 239 | 4.1 | $ | 979.90 |
| Benvenuto, Michelle | Paralegal | 238/258 | 0.2 | $ | 49.70 |
| | | | 664.8 | $ | 554,480.30 |

| Robinson Calcagnie, Inc. | | | | | |
|---|---|---|---|---|---|
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** | |
| Robinson, Daniel S. | Partner | 1,050 | 297.9 | $ | 312,795.00 |
| Polischuk, Wesley | Partner | 850 | 21.6 | $ | 18,360.00 |
| Olson, Michael | Associate | 675 | 281.1 | $ | 189,742.50 |
| Curnutt, Jennifer | Paralegal | 350 | 195.0 | $ | 68,250.00 |
| | | | 795.6 | $ | 589,147.50 |

| Barrack, Rodos & Bacine | | | | | |
|---|---|---|---|---|---|
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | | |
| Basser, Stephen R. | Partner | 1,100 | 20.6 | $ | 22,660.00 |
| Ward, Samuel M. | Partner | 1,000 | 49.1 | $ | 49,100.00 |
| Heo, Andrew J. | Associate | 400 | 10.9 | $ | 4,360.00 |
| O'Hara, Gavin R. | Paralegal | 250 | 8.8 | $ | 2,200.00 |
| | | | 89.4 | $ | 78,320.00 |

| Bottini & Bottini, Inc. | | | | | |
|---|---|---|---|---|---|
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** | |
| Bottini, Francis Jr. | Partner | 1,090 | 22.3 | $ | 24,307.00 |
| Chang, Albert Y. | Partner | 840 | 29.6 | $ | 24,864.00 |
| Ammirati, Stephanie | Paralegal | 350 | 35.7 | $ | 12,495.00 |
| | | | 87.6 | $ | 61,666.00 |

JOINT DECLARATION ISO OF MOTION FOR FEES, COSTS, AND SERVICE AWARDS

| Edelson Lechtzin LLP | | | | |
|---|---|---|---|---|
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Edelson, Marc | Partner | 1,100 | 44.0 | $ 48,400.00 |
| Lechtzin, Eric | Partner | 1,000 | 16.3 | $ 16,300.00 |
| Lechtzin, Eric | Partner | 1,100 | 0.2 | $ 220.00 |
| | | | 60.5 | $ 64,920.00 |
| **Emerson Firm PLLC** | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Emerson, John | Partner | 950 | 122.1 | $ 115,995.00 |
| Emerson, John | Partner | 1,050 | 76.7 | $ 80,535.00 |
| | | | 198.8 | $ 196,530.00 |
| **Girard Sharp LLP** | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Sharp, Dena | Partner | 1,150 | 0.1 | $ 115.00 |
| Elias, Jordan | Partner | 1,100 | 1.8 | $ 1,980.00 |
| Polk, Adam | Partner | 1,025 | 11.5 | $ 11,787.50 |
| Grille, Simon | Partner | 925 | 0.9 | $ 832.50 |
| Collur, Samhita | Associate | 550 | 4.8 | $ 2,640.00 |
| Limbach, Cole | Associate | 500 | 3.2 | $ 1,600.00 |
| von Goetz, Anne-Michele | Paralegal | 300 | 0.6 | $ 180.00 |
| Conklin, Jack | Paralegal | 300 | 2.8 | $ 840.00 |
| | | | 25.7 | $ 19,975.00 |
| **Goldenberg Schneider, LPA** | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Goldenberg, Jeffrey | Partner | 925 | 24.8 | $ 22,940.00 |
| Naylor, Todd | Partner | 875 | 1.7 | $ 1,487.50 |
| Pence, Cheryl | Paralegal | 175 | 1.9 | $ 332.50 |
| | | | 28.4 | $ 24,760.00 |
| **Kopelowitz Ostrow Ferguson Weiselberg Gilbert** | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |
| Ostrow, Jeff | Partner | 1,100 | 9.0 | $ 9,900.00 |
| Streisfeld, Jonathan | Partner | 1,100 | 0.2 | $ 220.00 |
| Grunfeld, Kenneth | Partner | 1,025 | 0.4 | $ 410.00 |
| Cardoso, Kristen | Partner | 850 | 2.3 | $ 1,955.00 |
| Sukert, Steven | Partner | 750 | 13.6 | $ 10,200.00 |
| Becker, Todd | Paralegal | 250 | 7.0 | $ 1,750.00 |
| Hausdorff, Andrew | Paralegal | 200 | 1.6 | $ 320.00 |
| | | | 34.1 | $ 24,755.00 |
| **Law Office of Todd M. Friedman, P.C.** | | | | |
| **Last Name, First Name** | **Professional Level** | **Billing Rate** | **Total Hours** | **Lodestar** |

| Adrian R. Bacon | Partner | 850 | 12.5 | $ | 10,625.00 |
|---|---|---|---|---|---|
| Todd M. Friedmn | Partner | 1,050 | 2.3 | $ | 2,415.00 |
| Erika Campany | Paralegal | 225 | 6.5 | $ | 1,462.50 |
| | | | **21.3** | **$** | **14,502.50** |

**Levi & Korinsky**

| Last Name, First Name | Professional Level | Billing Rate | Total Hours | Lodestar | |
|---|---|---|---|---|---|
| Maccarone, Courtney | Partner | 850 | 0.9 | $ | 765.00 |
| Brown, Colin | Associate | 650 | 14.2 | $ | 9,230.00 |
| Bentley, Kenny | Staff Atty | 475 | 0.6 | $ | 285.00 |
| Svensson, Mark | Staff Atty | 475 | 21.5 | $ | 10,212.50 |
| Herda, Amanda | Paralegal | 350 | 7.6 | $ | 2,642.50 |
| Walker, Cierra | Paralegal | 325 | 0.4 | $ | 130.00 |
| | | | **45.2** | **$** | **23,265.00** |

**Pearson Warshaw, LLC**

| Last Name, First Name | Professional Level | Billing Rate | Total Hours | Lodestar | |
|---|---|---|---|---|---|
| Warshaw, Daniel | Partner | 1,250 | 13.9 | $ | 17,375.00 |
| | | | **13.9** | **$** | **17,400.00** |

**Schubert Jonckheer & Kolbe LLP**

| Last Name, First Name | Professional Level | Billing Rate | Total Hours | Lodestar | |
|---|---|---|---|---|---|
| Schubert, Amber L | Partner | 975 | 6.2 | $ | 6,045.00 |
| Pulgram, Daniel L. M. | Associate | 500 | 17.4 | $ | 8,700.00 |
| Almeida, Nelida | Paralegal | 350 | 0.9 | $ | 315.00 |
| | | | **24.5** | **$** | **15,060.00** |

**Wand Law Firm**

| Last Name, First Name | Professional Level | Billing Rate | Total Hours | | |
|---|---|---|---|---|---|
| Wand, Aubrey | Partner | 850 | 11.0 | $ | 9,350.00 |
| | | | **11.0** | **$** | **9,350.00** |
| | | **TOTALS:** | **3976.5** | **$** | **3,296,025.80** |

60.    In addition to these tasks and the attendant resources already committed to them, Class Counsel will need to devote additional time and resources that are not already included in the Lodestar, including:

a. prepare for and attend the final approval hearing, including the research and drafting motion and any reply papers and responses to objections;

b. respond to any inquiries from Class Members;

c. oversee the Settlement through final approval of distribution of the

common fund;

    d.  oversee the claims administration process, including addressing any claim review issues; and

    e.  handle any appeals.

61.    In light of their significant experience, expertise, and skill in this area of litigation, Class Counsel's hourly rates are reasonable and in line with what they have been awarded in other cases, including in California District Courts. *See, e.g.*, *Hellyer et al. v. Smile Brands et al.*, Case No. 8:21-cv-01886-DOC-ADS (C.D. Cal) (approving rates of $950 per hour for Daniel Robinson, $750 per hour for Wesley Polischuk, $600 per hour for Michael Olson, $900 per hour for Abbas Kazerounian, and $595 per hour for Mona Amini); *In Re Planned Parenthood Los Angeles Data Incident Litigation*, Case No. 21STCV44106 (Super. Ct. Cal. Los Angeles Cnty.) (approving rate of $975 per hour for Daniel Robinson, $800 per hour for Wesley Polischuk, $650 per hour for Michael Olson, $975 per hour for Abbas Kazerounian, and $650 per hour for Mona Amini); *In Re: Ambry Genetics Data Breach Litigation*, No. 8:20-cv-00791 CJC (KESx) (C.D. Cal. March 6, 2023) (approving rates of $900 per hour for Daniel Robinson, $750 per hour for partner Wesley Polischuk, $550 per hour for Michael Olson, and $950 per hour for Tina Wolfson); *Flores v. Don Roberto*, No. 30-2021-01212035-CU-NP-CXC (Super. Ct. Cal. Orange Cnty.) (approving rates of $950 per hour for Daniel Robinson, $800 per hour for Wesley Polischuk, $600 per hour for Michael Olson); *Kolar v. CSI Financial Services, LLC*, No. 37-2021-00030426-CU-NP-CTL (Super. Ct. Cal. San Diego Cnty., Jan. 20, 2023) (approving rates at the time of $795 per hour for Abbas Kazerounian and $550 per hour for Mona Amini); *Cochran et al. v. The Kroger Co. et al.*, No. 5:21-cv-01887-EJD (N.D. Cal. Mar. 24, 2022) (approving rates of $950 per hour for Tina Wolfson and $750 per hour for Andrew Ferich); *Harbour, et al. v. California Health & Wellness Plan, et al.*, No. 5:21-cv-03322-EJD, (N.D. Cal. Jan. 16, 2024) (approving rates of $1200 per hour for Tina Wolfson and $850 per hour for Andrew Ferich); *Gutierrez v. Amplify Energy Corp.*,

Case No. 8:21-CV-016280DOC(JDEx) (C.D. Cal. Sept. 14, 2023) (approving rate of $1,450 per hour for Stephen G. Larson and $925 per hour for Paul A. Rigali); *In Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (approving rate of $800 per hour for Gary M. Klinger; *see also Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *15 (C.D. Cal. Mar. 24, 2015), aff'd, 847 F.3d 657 (9th Cir. 2017) (finding billing rates of $750–$930 for senior partners, $610–$750 for junior partners, $350–$690 for associates, and up to $345 for paralegals were reasonable, 10 years ago).

62.    The quality of the work performed by Class Counsel in obtaining the Settlement should also be evaluated in light of the quality of opposing counsel. Defendants in this case were represented by experienced counsel from the nationally prominent litigation firm Cooley LLP. This firm vigorously and ably defended the action.

63.    This case presented extraordinary challenges and problem solving that required extraordinary lawyering. In general, data breach class actions present relatively unchartered territory and no data breach case has gone to trial. Further, Class Counsel represented a class consisting of more than 16 million consumers from numerous states, requiring research and potential application of the laws of each respective state. The circumstances of the breach also presented significant technical challenges and risk, requiring Class Counsel to understand the complicated data systems at issue, and formulate a plan for presenting evidence concerning those systems to a jury in a comprehensible manner.

64.    Were the case to proceed in litigation, there would be numerous expert reports, costly expert depositions, and Daubert proceedings that risk excluding Plaintiffs' expert testimony. Further, there is a dearth of class action certification decisions in the data breach context, so that class certification presents an especially heightened risk. Plaintiffs unquestionably faced an uncertain road with another pending motion to dismiss and motion to strike the amended consolidated complaint, then class

1    certification, summary judgment, trial, and any appeals.

2        65.    The amount of attorneys' fees and costs requested here compares

3    favorably with that awarded in other data breach cases.

4        66.    In *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM

5    (C.D. Cal. May 10, 2019), the court awarded $10.5 million in attorneys' fees, finding

6    the amount only made up 10.5% of the total value of the settlement and a 1.65

7    multiplier of the lodestar. In determining the total settlement value, the court found the

8    following:

9            Broken down, the Settlement amount consists of $22
            million for the non-reversionary Settlement Fund, $11.7
10           million for Experian's remedial measures implemented as
            a result of this lawsuit, and $7,638,738.72 for every 0.1%
11           of Class Members who submit claims to receive Credit
            Monitoring and Insurance. (Motion for Preliminary
12           Approval (Dkt. 286-1), 20-21.) Based on current claims
            figures, the Credit Monitoring and Insurance Services will
13           add a value of at least $138.8 million. (Mot., 14.)

14       67.    The court went on to find that the "10.5 percentage and 1.65 lodestar are

15   also appropriate in comparison with other class counsel fee awards."

16       68.    *In In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018

17   WL 3960068 (N.D. Cal. Aug. 17, 2018), the court applied the percentage-of-fund

18   approach to award plaintiffs' counsel in that data breach case 27% of the settlement

19   fund, for a total of $31.05 million.

20       69.    Similarly, in *In re Target Corp. Customer Data Security Breach Litig.*,

21   No. 14-md-02522, 2015 WL 7253765 (D. Min. Nov. 17, 2015), the court approved a

22   fee award of $6.75 million, which represented 29% of defendant's total payout, which

23   included a $10 million settlement fund.

24       70.    More recently, the court in *In Re: Ambry Genetics Data Breach Litigation*,

25   No. 8:20-cv-00791 CJC (KESx) (C.D. Cal. March 6, 2023) approved a fee request that

26   constituted 24.33% of the settlement value after considering the value of the credit

27   monitoring services being offered and a 1.94 lodestar multiplier in a medical data

28   breach case.

71.    Likewise, this Court in *Hellyer et al. v. Smile Brands et al.*, Case No. 8:21-cv-01886-DOC-ADS (C.D. Cal) approved a fee request that constituted 12.9% of the value of the recovery to the settlement class with a multiplier of 1.44, which the Court found "conservative given the results that counsel achieved and that they took the case on contingency. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672, 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) ('"Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."')."

72.    Were this Court to use the percentage approach, the request would compare favorably. Class Counsel's fee request presently represents 15.3% of the present estimated Settlement Value of $48,961,012.20 million, but the claims rate and the estimated Settlement Value will continue to rise prior to Final Approval and this percentage will fall. Likewise, the exact figures will be provided prior to the Final Fairness Hearing.

### The Requested Costs and Expenses are Reasonable

73.    Class Counsel also seek reimbursement from the Settlement Fund of $57,346.40 for out-of-pocket costs and expenses that were reasonably and necessarily incurred by Class Counsel and other Plaintiffs' Counsel in connection with the action.

74.    The costs and expenses that Class Counsel seek for reimbursement included: courier expenses (e.g. Federal Express); postage charges; outside photocopying; travel expenses; deposition costs; legal research charges; court fees; expert witness and consulting fees; investigation fees, and mediation fees.

| Category | Total |
|---|---|
| Federal Express/Courier | $    256.01 |
| Postage Charges | $    401.07 |
| Outside Photocopying | $    615.00 |
| Hotels | $    3,386.47 |
| Meals | $    3,123.96 |

JOINT DECLARATION ISO OF MOTION FOR FEES, COSTS, AND SERVICE AWARDS

| | | |
|---|---|---|
| Mileage | $ | 187.23 |
| Air Travel | $ | 6,990.92 |
| Deposition Costs/Court | $ | 1,390.50 |
| Lexis/Westlaw | $ | 177.10 |
| Court Fees | $ | 9,783.68 |
| Witness/Expert Fees | $ | 9,270.83 |
| Investigative Fees | $ | 1,597.86 |
| Ground Transportation | $ | 1,300.99 |
| Mediation | $ | 17,604.65 |
| Miscellaneous | $ | 1,260.13 |
| **TOTAL EXPENSES:** | **$** | **57,346.40** |

75.    Class Counsel advanced these costs and expenses for the benefit of the classes they sought to represent without any guarantee that these costs and expenses would be recovered. In addition, Class Counsel seek reimbursement of costs for Plaintiffs' Counsel that attended the consolidation hearing.

### Proposed Class Counsel's Qualifications

**Daniel S. Robinson of Robinson Calcagnie, Inc.**

76.    As indicated by Mr. Robinson's firm resume attached hereto as **Exhibit 1**, Daniel S. Robinson has extensive experience in prosecuting complex data breach class actions. Daniel S. Robinson is a partner at Robinson Calcagnie, Inc., in Newport Beach, California, specializing in class actions and other complex litigation. His professional experience as lead counsel in consumer protection and data breach cases makes him qualified to serve as Class Counsel in this case. Mr. Robinson as Co-Lead Counsel has already demonstrated (1) a willingness and ability to commit to the time-consuming nature of this case; (2) a history of working cooperatively and respectfully with others proposed as Class Counsel in this case; and (3) an intimate familiarity with overseeing the preliminary approval and Settlement process, stemming, in part, from his prior experience.

77.    Mr. Robinson has been appointed to leadership positions in numerous state and federal courts, including in other data breach cases. In his appointments as Class Counsel in *Hellyer v. Smile Brands, Inc.*, No. 8:21-cv-01886-DOC-ADS (C.D. Cal.), *Ambry Genetics Data Breach Litigation*, No. 20-cv-00791-CJC-KES (C.D. Cal.), *In re Experian Data Breach Litigation*, Case No. 8:15-cv-01592-AG (C.D. Cal.), and *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 8:16-md-2737-MSS-AEP (M.D. Fla.), which resulted in settlements valued in excess of $15 million, $20 million, $39 million, and $12.5 million, respectively, Mr. Robinson demonstrated a personal commitment to be directly involved in these cases, including personally conducting discovery and overseeing the settlement process for each case.

78.    Mr. Robinson was also appointed as Additional Settlement Class Counsel in the federal action of *In Re: Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. 5:16-md-02752-LHK (N.D. Cal.), and Interim Co-Lead Counsel in the parallel state court action of *Yahoo! Inc. Private Information Disclosure Cases*, JCCP No. 4895 (Super. Ct. Cal.), which resulted in a $117.5 million settlement—one of the largest data breach settlements to date. Mr. Robinson is also one of few attorneys in the country who have successfully certified a class in a data breach case after contested briefing, through his service as Class Counsel in *St. Joseph Health System Medical Information Cases*, JCCP No. 4716 (Super. Ct. Cal.), which resulted in a landmark settlement weeks before trial, valued in excess of $39.5 million for just over 31,000 patients.

79.    Over the course of his career, Mr. Robinson has negotiated case management orders with opposing counsel, drafted briefs, pleadings, and discovery, taken and defended depositions, interviewed, retained, and worked with experts, facilitated filings, monitored billing, and negotiated and oversaw settlements through final approval. He has demonstrated his commitment as a member of the Plaintiffs' Steering Committee in *In re Marriott International Customer Data Security Breach Litigation*, MDL 2879 (D. Md.) and in *In Re: Snowflake, Inc., Data Security Breach*

*Litigation*, Case No. 2:24-MD-03126-BMM (D. Mont.), as Class Counsel in *Flores v Don Roberto Jewelers, Inc.*, 30-2021-01212035-CU-NP-CXC (finally approved settlement valued in excess of $4.5 million for 185,519 class members) and *In re Planned Parenthood Los Angeles Data Incident Litigation*, Case No. 21-CV-44106) (finally approved settlement valued in excess of $22 million for 409,437 class members), and as Interim Co-Lead Counsel in *Tsvetanova v. Regents of the University of California*, Case No. 37-2021-00039888-CU-NP-CTL (Super. Ct. Cal.) (settlement in principle reached). If appointed as Class Counsel, Mr. Robinson will provide the same level of commitment and coordination with co-counsel to the case as he has done in each of his prior appointments.

80.    Mr. Robinson was also appointed as Class Counsel in *In re Ring LLC Privacy Litigation*, Case No. 19-CV-10899 MWF (RAOx), and *Dodge v. PHH Corporation, et al.*, 8:15-CV-01973-FMO-AFM (C.D. Cal.); Lead Settlement Class Counsel in *Blue Cross of California Website Security Cases*, JCCP No. 4647 (Super. Ct. Cal.); Co-Lead Counsel in Risperdal® and Invega® Product Liability Cases, JCCP No. 4775 (Super. Ct. Cal.); Plaintiffs' Executive Committee Member in *In re Biomet M2a Magnum Hip Implant Products Liability Litigation*, MDL No. 2391, and *In re Heparin Products Liability Litigation*, MDL No. 1953; Plaintiffs' Steering Committee Member in the *In re Actos Product Liability Cases*, JCCP No. 4696 (Super. Ct. Cal.), *In re Glugagon-Like Peptide-1 Receptor Agonists Products Liability Litigation*, MDL 3094 (Hon. Karen S. Marston), and *In re Fosamax/Alendronate Sodium Drug Cases*, JCCP No. 4644 (Super. Ct. Cal.).

### Stephen G. Larson of Larson LLP

81.    As indicated by Mr. Larson's firm resume attached hereto as **Exhibit 2**, Larson LLP is a boutique litigation firm with 50 lawyers across four offices in the United States and United Kingdom.

82.    Larson LLP represents plaintiffs and defendants in numerous areas of practice, including appellate litigation, complex civil and class action litigation,

antitrust and competition litigation, civil rights litigation, intellectual property litigation, international arbitration, media and entertainment litigation, partnership disputes and securities litigation, real estate litigation, internal investigations and compliance, and white-collar defense and government investigations.

83. Larson LLP's representative clients have included Walt Disney Co., LACERA, Malouf Home, Aimco, Cedars Sinai, City of Hope, CR&R Environmental Services, IBM, HBO, Live Nation Entertainment, FedEx, Korbel Champagne Cellars, Deutsch Family Spirits, Mercer Global Advisors, Cathay Bank, Mission Bank, Eurasian Natural Resources Corporation, Orange County Water District, Majestic Realty Co., Hewlett Packard, Sunrun, and World Oil; several States and Counties; current and former federal, state, and local government officials; and numerous C-suite executives from Fortune 500 companies.

84. Mr. Larson is admitted to practice in California and District of Columbia state courts, as well as before the U.S. Supreme Court, U.S. Court of Appeals for the Federal, First, Eighth, Ninth, Tenth Circuits; U.S. Court of Federal Claims; Court of International Trade; and the U.S. District Court for the Central, Eastern, Northern, and Southern District of California.

85. As a federal judge for nearly a decade, Mr. Larson adjudicated over a thousand cases, including:

- *United States v. Nazario*: a Military Extraterritoriality Jurisdiction Act case involving U.S. Marines accused of manslaughter during the battle of Fallujah

- *United States v. Duro*: a dispute involving the U.S. Bureau of Indian Affairs' efforts to close a major migrant worker camp on the Torres Martinez Indian Reservation in the Coachella Valley; and

- *Siegel v. Warner Bros. Entertainment, Inc.*: a dispute regarding the determination of ownership of copyrights related to Superman.

86. As a Partner in private practice, numerous courts have relied on Mr. Larson's experience on the federal bench to resolve complex discovery disputes. Mr. Larson has been appointed as a Special Master and Discovery Referee in numerous matters, including the California State Court Opioid litigation (appointed by Judge

Peter Wilson, Orange County Superior Court) and the JUUL Marketing MDL (appointed by Judge William Orrick, Northern District of California).

87.    In the last several years, Mr. Larson has helped obtain over $500 million in recoveries for clients (plaintiffs and defendants) in an array of complex disputes. These recoveries include a $154 million settlement in *In Re: Snap Inc. Securities Litigation*, No. 2:17-cv-03679; $65 million from San Bernardino County for civil rights claims involving allegations of a retaliatory investigation and malicious prosecution in *Colonies Partners LP v. County of San Bernardino*, No. 5:18-cv-00420; $65 million from a regional healthcare provider and its founder in *United States ex rel. Karin Berntsen v. Prime Healthcare Services, Inc.*, et al., No. 11-cv-08214; and over $40 million for the State of Arizona and the State of Oklahoma from Volkswagen AG, et al. as a result of the "clean diesel" scandal.

88.    Most recently, Larson LLP, as co-lead class counsel, recovered $95 million for class plaintiffs in *Gutierrez, Jr. et al. v. Amplify Energy Corp.* et al. No. 8:21-cv-01628, the lawsuit arising from the pipeline break and oil spill of the coast of Southern California.

**Tina Wolfson of Ahdoot & Wolfson PC**

89.    In March 1998, Robert Ahdoot and I founded AW, now a nationally recognized law firm that specializes in complex and class action litigation, with a focus on privacy rights, consumer fraud, anti-competitive business practices, employee rights, defective products, civil rights, and taxpayer rights. The attorneys at AW are experienced litigators who have often been appointed by state and federal courts as lead class counsel, including in multidistrict litigation. In over two decades of its existence, AW has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring hundreds of millions of dollars to the victims, and affecting real change in corporate behavior. A copy of AW firm's resume is attached hereto as **Exhibit 3.**

90.    AW has been on the cutting edge of privacy litigation since the late 1990s,

1   when its attorneys successfully advocated for the privacy rights of millions of

2   consumers against major financial institutions based on the unlawful compilation and

3   sale of detailed personal financial data to third-party telemarketers without consumers'

4   consent. While such practices later became the subject of Gramm-Leach-Bliley Act

5   regulation, they were novel and hidden from public scrutiny at the time AW was

6   prosecuting them. Our work shed light on how corporations and institutions collect,

7   store, and monetize mass data, leading to governmental regulation.

8       91.    AW has been at the forefront of privacy-related litigation since then and

9   its efforts have also shaped privacy law precedent. For example, as lead counsel in

10  *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon

11  Johnson Coleman), AW successfully appealed the trial court's order granting a motion

12  to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking

13  opinion, now cited routinely in briefing on Article III and data breach standing, was

14  the first appellate decision to consider the issue of Article III standing in data breach

15  cases in light of the Supreme Court's decision in *Clapper v. Amnesty International*

16  *USA*, 568 U.S. 398 (2013). The Seventh Circuit concluded that data breach victims

17  have standing to pursue claims based on the increased risk of identity theft and fraud,

18  even before that theft or fraud materializes in out-of-pocket damages. *Remijas v.*

19  *Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

20      92.    AW has been appointed lead counsel in numerous complex consumer

21  class actions, including many high-profile data breach and other privacy matters. The

22  following are some examples of class actions that AW has litigated to conclusion or

23  are currently litigating on behalf of clients – either as Class Counsel, proposed Class

24  Counsel or members of a Court appointed Plaintiff Steering Committee ("PSC"):

25      a.    *In re Zoom Video Communications, Inc. Privacy Litig.*, No. 5:20-cv-

26  02155-LHK (N.D. Cal.) (Hon. Lucy H. Koh): As co-lead Class Counsel, AW achieved

27  a finally approved $85 million cash settlement and comprehensive injunctive relief

28  which addressed the privacy issues on which Plaintiffs' claims were based.

b.     *Rivera v. Google LLC*, No. 2019-CH-00990 (Ill Cir. Ct.) (Hon. Anna M. Loftus): As co-lead counsel, AW achieved a finally approved $100 million cash settlement, which included meaningful injunctive relief relating to Google's alleged illegal collection, storage, and use of the biometrics of individuals who appear in photographs uploaded to Google Photos in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

c.     *Experian Data Breach Litig.*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford): AW achieved a finally approved settlement conservatively valued at over $150 million, which also provided robust injunctive relief for nearly 15 million affected class members.

d.     *In re Google Location History Litigation,* No. 5:18-cv-05062 (N.D. Cal.) (location tracking) Hon. Edward J. Davila: As co-lead counsel, AW achieved a finally approved $62 million non-reversionary common fund settlement and robust injunctive relief.

e.     *In re Ambry Genetics Data Breach Litig.,* No. 8:20-cv-00791 (C.D. Cal.) (data breach) Hon. Cormac J. Carney: As co-lead counsel, AW achieved a settlement conservatively valued at over $20 million which included robust injunctive relief.

f.     *Cochran v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.) (Hon. Edward J. Davila): As co-lead counsel, AW achieved a finally approved $5 million nationwide settlement that provided monetary relief to class members who were impacted by the Kroger episode of the Accellion FTA data breach. The settlement also provided robust injunctive relief in the form of data security enhancements and business practices changes.

g.     *Harbour, et al. v. California Health & Wellness Plan, et al.*, No. 5:21-cv-03322 (N.D. Cal.) (Hon. Edward J. Davila): As co-lead counsel, AW achieved a finally approved $10 million nationwide settlement that provided monetary relief to class members who were impacted by the Health Net episode of the Accellion FTA data breach. This settlement also provided robust injunctive relief.

h.    *Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI (D. Or.) (Hon. Michael H. Simon): As a member of a five-firm PSC, AW was instrumental in litigating the case through class certification and achieving a nationwide class settlement valued at $74 million for issues arising from a data breach disclosing the sensitive personal and medical information of 11 million Premera Blue Cross members.

i.    *Adlouni v. UCLA Health System Auxiliary*, No. BC589243 (Cal. Super. Ct. Los Angeles Cnty.) (Hon. Daniel J. Buckley): As a member of the PSC for patients impacted by a university medical data breach, AW achieved a settlement providing two years of credit monitoring, a $5,275,000 fund, and robust injunctive relief.

j.    *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D.D.C.) (Hon. Amy Berman Jackson): As a member of the Plaintiffs' Steering Committee, AW briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit. Judge Jackson recently issued her preliminary approval of a $60 million settlement in this Action.

k.    In addition, AW has served or is serving as plaintiffs' counsel in class actions enforcing consumer rights under the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co.*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) (class counsel in $10 million nationwide settlement) and *Melito v. American Eagle Outfitters, Inc.*, No. 1:14-cv-02440-VEC (S.D.N.Y.) (Hon. Valerie E. Caproni) ($14.5 million nationwide settlement).

l.    AW has also served as lead counsel in a myriad of other types (non-privacy) of successful class actions, including: *Alvarez v. Sirius XM Radio Inc.,* No. 2:18-cv-08605 (C.D. Cal.) Hon. James V. Selna ($420 million class settlement arising out of alleged breach of contract re subscription services); *Eck v. City of Los Angeles,* No. BC577028 (Cal. Super. Ct.) Hon. Ann Jones. ($295 million class settlement arising from alleged unlawful electricity use tax); *Lavinsky v. City of Los Angeles*, No.

BC542245 (LASC) Hon. Ann Jones ($91 million class settlement arising from alleged unlawful natural gas use tax); *McKnight v. Uber Technologies, LLC*, No. 3:14-cv005615 (N.D. Cal.) ($32.5 million class settlement arising from alleged hidden fees); *Pantelyat v. Bank of America,* No. 1:16-cv-8964 (S.D.N.Y.) ($22 million class settlement arising from alleged unlawful non-sufficient fund fees).

93.     AW has decades of experience in the prosecution of class actions, including data breach and privacy lawsuits such as this action. Given AW's proven track record of experience and results, and its specific expertise in data privacy class action litigation, it can more than adequately represent the proposed Settlement Class.

**Abbas Kazerounian of Kazerouni Law Group APC**

94.     As indicated by Mr. Kazerounian's firm resume attached hereto as **Exhibit 4**, Mr. Kazerounian's has extensive experience in litigating class actions, including complex data breach class actions. Mr. Kazerounian is a founding partner at Kazerouni Law Group, APC (or "KLG"), based in Costa Mesa, California, specializing in class actions and other complex litigation. Mr. Kazerounian's and KLG's professional experience as lead counsel in consumer protection and data breach cases makes him qualified to serve a Class Counsel in this case. Mr. Kazerounian, as Interim Co-Lead Counsel, has already demonstrated (1) a willingness and ability to commit to the time-consuming nature of this case; (2) a history of working cooperatively and respectfully with others proposed Class Counsel in this case; and (3) an intimate familiarity with overseeing the Settlement process, including those involving statutory payments, stemming, in part, from his prior experience.

95.     Kazerouni Law Group, APC has a long track record of successfully litigating large-scale consumer and complex actions, with extensive experience litigating data breach and data privacy cases in particular.

96.     Kazerouni Law Group, APC is among the most experienced data privacy class action firms in the United States, having represented plaintiffs in nationwide class actions and other complex, large-scale litigations for over fifteen years. My firm has

1  prosecuted a significant number of data breach and privacy cases as lead or primary
2  counsel, achieving many successful results in those cases and numerous published
3  decisions. As a partner at Kazerouni Law Group, APC, I have focused my practice on
4  consumer litigation, class actions, and privacy class actions in particular. I have been
5  instrumental in building the privacy and data breach practice at Kazerouni Law Group
6  and accomplishing the many victories Kazerouni Law Group has achieved in this
7  practice area. Exhibit 3 details our achievements in privacy class actions, as well as
8  other California and nationwide consumer class actions.

9        97.    Kazerouni Law Group's recent accomplishments and ongoing privacy
10 class actions can be found on its firm resume included in Exhibit 3.

11       98.    As indicated in Kazerouni Law Group's firm resume attached hereto as
12 Exhibit 3, Mr. Kazerounian is regarded as a one of the preeminent consumer rights
13 attorneys in Southern California. His depth of experience and knowledge in this
14 practice area along with his trial skills, make Mr. Kazerounian one of the premier
15 advocates within this field of law. Mr. Kazerounian's firm, Kazerouni Law Group, has
16 been responsible for over 650 published opinions, and Mr. Kazerounian has
17 successfully argued before the Ninth Circuit of Appeals on numerous occasions.
18 Specifically, he has presented oral argument before the Ninth Circuit Court of Appeals
19 in several landmark cases, such as *Marks v. Crunch San Diego, LLC*, No. 14-56834
20 (December 6, 2016), with a unanimous published decision in favor of client, *Marks v.*
21 *Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept.
22 20, 2018); *Knutson v. Sirius XM Radio, Inc.,* No. 12-56120 (February 7, 2014); and
23 three times in *Afewerki v. Anaya Law Group*, Nos. 15-55100 (April 7, 2017), 18-56510
24 (May 15, 2019), and 19-56486 (Jan. 21, 2021).

25       99.    In 2013, 2014, and 2015 Mr. Kazerounian was selected by his peers as a
26 Rising Star and from 2016-present as a Super Lawyer (a prestigious recognition given
27 to only up to 5 percent of the attorneys in the state). In addition, Mr. Kazerounian has
28 been recognized as one of the Top 50 Orange County Super Lawyers from 2021-

present and the Top 100 Southern California Super Lawyers from 2021-present.

100.    In addition to his experience as a consumer attorney, Mr. Kazerounian is also an adjunct professor at California Western School of Law, where he teaches a consumer law course.

101.    Kazerouni Law Group's prior experience in data breach class actions in particular includes: *McAfee et al. v. Treasure Island, LLC*, No. A-18-772302-C, 2019 Nev. Dist. LEXIS 421 (D. Nev.) (granting final class action settlement approval in data breach action, on May 23, 2019); *Santana, et al. v. Rady Children's Hospital – San Diego*, Case No. 37-2014-0002241 (Super. Ct. Cal. Feb. 8, 2019) (finally approved California Confidentiality of Medical Information Act (CMIA) class action that settled shortly before trial, providing approximately 14,100 class members with the benefit in the form of $6,764,616 of credit monitoring and identity theft protection packages, $5,000,000 cash payment, and $1,800,000 in remedial measures, for a total value at over $13.5 million); Class Counsel in *R.O., et al. v. Rady Children's Hospital – San Diego*, Case No. 37-2020-00011841-CU-BT-CTL (California CMIA class action settlement granted final approval on December 10, 2021); Class Counsel in *Newman v. JM Bullion, Inc*., No. BCV-21-100436-BCB (CCPA data breach class action, granted final approval on June 30, 2022); *Kolar v. CSI Financial Services, LLC*, No. 37-2021-00030426-CU-NP-CTL (Super. Ct. Cal. Jan. 20, 2023) (data breach class action granted final approval); Class Counsel in *Stoffers v. Dave, Inc.,* No. 20STCV35381 (California Consumer Privacy Act (CCPA) data breach class action, granted preliminary approval), Interim Liaison Counsel in *In re Planned Parenthood Los Angeles Data Incident Litigation*, Case No. 21CV44106, Interim Co-Lead Counsel in *Hellyer, et al v. Smile Brands Inc., et al.*, 8:21-cv-01886-DOC-ADSx, as well as other pending matters.

**Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC**

102.    Gary M. Klinger is as Senior Partner at the international plaintiffs' class action law firm Milberg. Since Milberg's founding in 1965, it has repeatedly taken the

lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[2] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the U.S. Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg has more than 100 attorneys and has offices across the U.S. and the European Union.

103.   As a Senior Partner at Milberg, Mr. Klinger has extensive experience serving as lead or co-lead counsel in numerous privacy class actions. His privacy practice includes: data breaches, ransomware attacks, unlawful collection and/or disclosure of personal information, and violations of privacy statutes and/or laws, such as the Illinois Biometric Information Privacy Act ("BIPA"), Illinois Genetic Information Privacy Act, California Consumer Privacy Act, California Medical Information Act, Telephone Consumer Protection Act, and General Data Protection Regulation.

104.   Mr. Klinger was recognized publicly as a "trailblazer" in the privacy space. He led the way in bringing privacy class actions arising from the use of tracking technologies such as the "Meta Pixel." Mr. Klinger filed the first-ever privacy case in the healthcare setting for unlawful disclosure of private health information (*Quinto v. The Regents of the University of California*, Case No. 22-cv-012970). In the wake of the *Quinto* lawsuit, the Department of Health and Human Services (HHS) issued a bulletin on the requirements under HIPAA for online tracking technologies providing that "[r]egulated entities are not permitted to use tracking technologies in a manner that

---

[2] *See, e.g., In re Tyco Int'l Ltd., Securities Litig.*, MDL 1335 (D. N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D. N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[3] *See* https://milberg.com/precedent-setting-decisions/page/3/.

would result in impermissible disclosures of ePHI to tracking technology vendors or any other violations of the HIPAA Rules." Since Mr. Klinger filed the *Quinto* lawsuit, dozens of similar lawsuits have been filed against healthcare providers by plaintiffs' class action firms across the country, numerous investigative articles have been published, and Congress even opened an inquiry into the issue.

105. Mr. Klinger has been appointed by state and federal courts to act as Class Counsel for millions of consumers and recovered hundreds of millions of dollars for consumers throughout the country. Presently, he is lead or co-lead counsel in more than thirty (30) active class action lawsuits pending in state and federal courts across the country.

106. Mr. Klinger was recognized as one of the 2024 Lawdragon 500 Leading Litigators in America. He also was recognized in 2024 by Chambers as one of the leading attorneys in the United States for Privacy and Data Security Litigation. He is a Certified Information Privacy Professional (CIPP/US) and a member of the International Association of Privacy Professionals.

107. Mr. Klinger has settled on a class-wide basis more than seventy-five class actions involving privacy violations where he served as lead or co-lead counsel and recovered hundreds of millions of dollars in the process.

a. For example, in *Parris, et al v. Meta Platforms, Inc.*, Case No. 2023LA000672 (Ill. 18th Jud. Cir. Ct., DuPage Cnty.), Mr. Klinger negotiated and won final approval for a $64.25 million settlement on behalf of Illinois Instagram users for biometric privacy claims. This landmark settlement is the third largest biometric privacy settlement in U.S. history.

b. In *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021), Mr. Klinger, as appointed co-lead counsel, obtained final approval of a $17.6 million dollar settlement to resolve data breach class action claims against Kemper Corporation in a case involving more than six million class members.

c. Mr. Klinger currently serves as appointed co-lead counsel representing

1  more than three million class members in another major privacy class action in the

2  Seventh Circuit, which recently settled for a $21 million non-reversionary common

3  fund. *See In re Arthur J. Gallagher Data Breach Litig.*, No. 1:21-cv-04056 (N.D. Ill.).

4      d.      Mr. Klinger was appointed Co-Lead Counsel in the privacy case styled,

5  *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP

6  (S.D. Ind.), which involves approximately one million class members and settled on a

7  class-wide basis for $4.35 million.

8      e.      Mr. Klinger served as co-lead counsel in the consolidated privacy

9  litigation styled, *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG

10  (W.D. Tex.), which involves more than 2.4 million class members and settled on a

11  class-wide basis for $4.75 million.

12      108.   Mr. Klinger and Milberg's data breach experience compare favorably

13  with that of any law firm in the country. The firm has ample resources (both financial

14  and personnel, with over 100+ attorneys at the firm) to fully and adequately represent

15  the interests of the proposed class here.

16      109.   Mr. Klinger graduated from the University of Illinois at Urbana-

17  Champaign in 2007 and from the University of Illinois College of Law in 2010.

18      110.   A copy of Milberg's firm resume is attached as **Exhibit 5**.

19      111.   Class Counsel respectfully request the Court grant Plaintiffs' Motion for

20  Award of Attorneys' Fees, Costs, and Service Awards.

21      We declare under penalty of perjury under the laws of the United States of

22  America that the foregoing is true and correct.

23      Executed this 21st day of March 2025.

24  _____          _____

25  Daniel S. Robinson                         Stephen G. Larson

26  _____          _____

27  Tina Wolfson                               Gary M. Klinger

28  _____

    Abbas Kazerounian

1

2

## CERTIFICATE OF SERVICE

3

I hereby certify that on March 21, 2025, I caused the foregoing to be filed

4

electronically using the Court's electronic case filing (ECF) system, which will

5

automatically send a notice of electronic filing to the email addresses of all counsel of

6

record.

7

Dated: March 21, 2025                    /s/ Daniel S. Robinson
                                         Daniel S. Robinson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT DECLARATION ISO OF MOTION FOR FEES, COSTS, AND SERVICE AWARDS

# EXHIBIT 1

# RC ROBINSON CALCAGNIE, INC.



19 Corporate Plaza Dr.
Newport Beach, CA 92660
(949) 720-1288
drobinson@robinsonfirm.com

Practice Areas

Product Liability
Personal Injury
Consumer Class Actions
Consumer and Data Privacy
Pharmaceutical and Medical
Device

Education

**Williams College** – B.A.,
1998, English

**Loyola Law School** – J.D.,
2003

Bar Admissions

2004, New York
2006, California
2011, Pennsylvania

Daniel S. Robinson is a partner at Robinson Calcagnie, Inc. where he focuses on complex civil litigation involving products liability and consumer protection. He is admitted to practice law in California, New York, and Pennsylvania.

Dan also represents municipalities in environmental contamination cases, including Orange County Water District and other water producers throughout Orange County, California, in litigation to recover costs associated with the PFAS contamination of drinking water, surface water, and groundwater. He also recently represented the City of Huntington Beach against responsible parties for the 2021 Huntington Beach Oil Spill, which resulted in a $5.25 million Settlement.

Dan handles class action cases involving data breaches and privacy violations. He presently serves as Interim Co-Lead Counsel in *Tsvetanova, et al. v. The Regents of the University of California, et al.*, 37-2021-00039888-CU-PO-CTL, before the Hon. Richard S. Whitney.

Dan also presently serves on the Plaintiffs' Steering Committee in *In re Glugagon-Like Peptide-1 Receptor Agonists Products Liability Litigation*, MDL 3094, before the Hon. Karen S. Marston.

In 2024, he was appointed Class Counsel in *In Re PPLA Data Incident Litigation*, 21STCV44106, by the Hon. Yvette M. Palazuelos (Ret.).

In 2023, he was appointed Class Counsel in *Hellyer, et al v. Smile Brands Inc., et al.*, 8:21-cv-01886, by the Hon. David O. Carter; Class Counsel in *Flores v. Don Roberto Jewelers, Inc.*, 30-2021-01212035, by the Hon. Peter Wilson (Ret.); and Class Counsel in *In re Ring LLC Privacy Litigation*, 2:19-cv-10899, by the Hon. Michael W. Fitzgerald.

In 2022, he was appointed Class Counsel in *In re Ambry Genetics Data Breach Litigation,* 8:20-cv-00791, by the Hon. Cormac J. Carney (Ret.).

In 2020, he was appointed Class Counsel in *In re 21st Century Oncology Customer Data Security Breach* Litigation, MDL 2737, by the Hon. Mary S. Scriven.

In 2019, he was appointed to the Plaintiffs' Steering Committee in *In re Marriott International Customer Data Security Breach Litigation*, MDL 2879, by the Hon. Paul W. Grimm (Ret.).

In 2018, he was appointed as Class Counsel in *In re Experian Data Breach Litigation*, 8:15-cv-01592, by the Hon. Andrew J. Guilford (Ret.).

In 2017, he was appointed Co-Lead Counsel in *Yahoo! Inc. Private Information Disclosure Cases*, JCCP No. 4895, by the Hon. Thierry P. Colaw (Ret.); and in 2019, he was subsequently appointed as

# ROBINSON CALCAGNIE, INC.

Additional Settlement Class Counsel in the federal parallel action of *In Re: Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. 5:16-md-02752 (N.D. Cal.), by the Hon. Lucy H. Koh.

In 2012, he was appointed as Co-Lead Counsel for the Class in *St. Joseph Health System Medical Information Cases*, JCCP No. 4716, by the Hon. Kim G. Dunning (Ret.). In 2011, Dan was appointed Lead Settlement Class Counsel in *Blue Cross of California Website Security Cases*, JCCP No. 4647, by the Hon. Ronald L. Bauer (Ret.).

Dan also handles other class action and product liability cases. In 2018, he was appointed Class Counsel in *Dodge v PHH Corporation, et al.*, 8:15-cv-01973, by the Hon. Fernando M. Olguin. In 2014, Dan was appointed Co-Lead Counsel in the *Risperdal® and Invega® Product Liability Cases*, JCCP No. 4775, by the Hon. William F. Highberger. In 2012, Dan was appointed to the Plaintiffs' Executive Committee in *In re Biomet M2a Magnum Hip Implant Products Liability Litigation*, MDL 2391, by the Hon. Robert L. Miller, Jr. (Ret.). Also in 2012, he was appointed to the Plaintiffs' Steering Committee in *In re Actos Product Liability Cases*, JCCP No. 4696, by the Hon. Kenneth R. Freeman. In 2011, he was selected to the Plaintiffs' Steering Committee in *In re Fosamax/Alendronate Sodium Drug Cases*, JCCP No. 4644, by the Hon. Ronald Bauer (Ret.).

Dan was named 2022 Lawyer of the Year in the area of products liability litigation for Orange County by Best Lawyers. He was selected as a 2022, 2023 and 2024 Lawdragon 500 Leading Plaintiff Consumer Lawyer. In 2021, he received the Daily Journal's California Lawyer Attorney of the Year award for representing victims in the Mandalay Bay Shooting cases. Dan has been honored by the Daily Journal as one of the Top 100 Attorneys in California (2022, 2023, 2024), the Top 25 Plaintiff Lawyers in California (2015), and Top 30 Plaintiffs Lawyers in California (2019, 2022). He was selected as one of the Top 50 lawyers in Orange County by Super Lawyers in 2022, 2021, 2020, 2019, and 2016. In 2017, Dan received the American Association of Justice Above and Beyond Award. In 2014, he received the American Association of Justice Wiedemann & Wysocki Award for demonstrating a "commitment to the profession and support for improving the civil justice system." In 2012, The National Trial Lawyers named Dan as one of the Top 40 Lawyers Under 40 in the United States. Dan was awarded the 2011 Young Gun Award by the Orange County Trial Lawyers Association.

Before working at Robinson Calcagnie, Inc., Dan was an associate at O'Melveny & Myers, LLP, where he handled matters of general business litigation. Before that, Dan served as an Assistant District Attorney in the New York County District Attorney's Office under the Hon. Robert M. Morgenthau, where he conducted numerous criminal trials, investigations, and grand jury proceedings in the Trial Bureau Division, the Domestic Violence Unit, the Public Assistance Fraud Unit, the Counterfeit Trafficking Unit, and the Identity Theft Unit.

Dan serves as the 2024 Parliamentarian for the Consumer Attorneys of California. Dan served as the 2022 President of the Orange County Bar Association, and the 2018 President of Project Youth OCBF, a non-profit that provides education, resources, and mentoring to underprivileged Orange County youth. He serves as a board member of the Public Law Center and served as co-chair of its 2017 and 2018 Volunteers for Justice Dinners. He is a member of the Board of Directors for Public Law Center, Loyola Law School, Consumer Attorneys of California, and the Orange County Chapter of the Federal Bar Association.

## <u>SELECT CONSUMER DATA BREACH AND PRIVACY LITIGATION EXPERIENCE</u>

***Tsvetanova v. Regents of the University of California,*** **Case No. 37-2021-00039888 (San Diego Sup. Ct.).** Dan serves as Interim Co-Lead Counsel for the Proposed Class in a class action against Regents of the University of California related to a data breach announced in 2020.

# RC ROBINSON CALCAGNIE, INC.

***In re Ambry Genetics Data Breach Litigation*, Case No. 8:20-cv-00791 (C.D. Cal.) (Class Counsel).** Dan served as Class Counsel in a class action for alleged privacy violations related to a data breach involving genetic information. The data breach affected approximately 225,370 patients, including 25,754 patients from California and 7,172 patients from Illinois. The case was ultimately resolved for $12.25 million and provided benefits valued in excess of $20 million.

***In Re Marriott International, Inc., Customer Data Security Breach Litigation*, Case No. 8:19-md-02879-PWG (D. Md.) (Plaintiffs' Steering Committee).** Dan serves on the Plaintiffs' Steering Committee in a case that was certified twice to proceed as a class action in Maryland district court against Marriott and other entities, alleging their inadequate data security resulted in a data breach affecting approximately 383 million guest records.

***In Re: Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. 5:16-md-02752-LHK (N.D. Cal.) (Additional Settlement Class Counsel).** Dan served as Additional Settlement Class Counsel in a class action against Yahoo, alleging its inadequate data security resulted in multiple data breaches, including a breach affecting more than three billion Yahoo user accounts. Dan and his team litigated the case cooperatively with other counsel to achieve a settlement offering record benefit benchmarks and a $117.5 million common fund, the largest common fund obtained in a data breach case at the time. The settlement recently obtained preliminary approval.

***In re 21st Century Oncology Customer Data Security Breach Litigation*, Case No. 8:16-md-2737-MSS (M.D. Fla.) (Class Counsel).** Dan served as Class Counsel managing a PSC of ten firms in a class action against 21st Century Oncology alleging 21st Century's negligence resulted in the unauthorized acquisition of 2.2 million patients' personally identifiable information and protected health information. After Dan's 2018 deposition of defendant's investigative consultant, Kroll, Inc. (one of the major consultants hired by defense counsel in almost every data breach case), plaintiffs were able to amend their complaint and secure the 11th Circuit's first district court order holding that future risk of identity theft is a cognizable harm for Article III standing purposes.

***In re Experian Data Breach Litigation*, Case No. 8:15-cv-01592-AG (C.D. Cal.) (Class Counsel).** Dan served as Class Counsel managing a PSC of seven firms in a class action against Experian alleging the credit bureau permitted unauthorized parties to acquire the personally identifiable information of nearly 15 million consumers. After defeating a motion to dismiss and engaging in extensive discovery where Dan deposed all witnesses, the Hon. Andrew J. Guilford granted final approval of the settlement valued in excess of $37 million.

***St. Joseph Health System Medical Information Cases*, JCCP No. 4716 (Super. Ct. Cal.) (Class Counsel).** Dan served as Co-Lead Class Counsel managing a PSC of seven firms in a certified class action alleging violations of the California Confidentiality of Medical Information Act, Cal. Civ. Code. § 56.10, due to St. Joseph Health System's failure to maintain and secure the protected health information of nearly 31,000 patients. After obtaining class certification and defeating the defendant's motion for summary judgment as to negligence, UCL, and statutory claims, Dan and his team litigated the case to within three weeks of trial where they secured a then-record PHI settlement which included, among other benefits, cash payments of $242 for each class member.

# ROBINSON CALCAGNIE, INC.



19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288
molson@robinsonfirm.com

Practice Areas

Product Liability
Personal Injury
Consumer Class Actions
Consumer and Data Privacy
Pharmaceutical and Medical
   Device

Education

**University of California,
Los Angeles** – B.A., *cum
laude*, History, 2011

**University of California,
Irvine School of Law** – J.D.,
2016

Michael W. Olson is an attorney at Robinson Calcagnie, Inc. where he handles personal injury, class action, and mass tort litigation involving products liability and consumer rights.

While with Robinson Calcagnie, Mr. Olson has worked on many important cases, including *Yahoo! Inc. Private Information Disclosure Cases*, JCCP No. 4895 (Super. Ct. Cal. Orange Cnty.) ($117.5 million class action settlement), *In re Experian Data Breach Litigation*, Case No. 8:15-cv-01592-AG (C.D. Cal.) (class action settlement valued in excess of $39 million), *In re Ambry Genetics Data Breach Litigation*, Case No. 8:20-cv-00791 (C.D. Cal.) (class action settlement valued in excess of $20 million); *Hellyer, et al v. Smile Brands Inc., et al.*, 8:21-cv-01886 (class action settlement valued in excess of $15 million); and *Flores v. Don Roberto Jewelers, Inc.*, Case No. 30-2021-01212035 (Super. Ct. Cal. Los Angeles Cnty.) (class action settlement valued in excess of $4.5; *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, MDL No. 2737 (class action settlement valued in excess of $12.5 million), and *Dodge et. al. v. PHH Corp. et. al.*, Case No. 8:15-CV-01973-FMO-AFM (C.D. Cal.) ($17 million class action settlement). Mr. Olson was also a member of the team that helped secure a landmark settlement in *Sheppard, et al. v. Mandalay Bay, LLC, et al.* for the victims of the country's worst mass shooting, and was nominated for the 2021 Consumer Attorney of the Year award by Consumer Attorneys of California.

Currently, Mr. Olson works on numerous cases, including *Tsvetanova v. Regents of the University of California*, Case No. 37-2021-00039888-CU-NP-CTL (San Diego Sup. Ct.); *In Re PPLA Data Incident Litigation*, Case No. 21STCV44106 (Super. Ct. Cal. Los Angeles Cnty.); and *In Re Marriott International, Inc., Customer Data Security Breach Litigation*, MDL No. 2879 (D. Md.). Mr. Olson also works on cases concerning PFAS contamination of drinking water, surface water, and groundwater through Orange County, California.

After receiving his undergraduate degree from the University of California, Los Angeles, Mr. Olson graduated from the University of California, Irvine School of Law. While at UC Irvine School of Law, Mr. Olson served as a staff editor on the UC Irvine Law Review and as a board member of the UC Irvine Moot Court competition. Mr. Olson also participated in the UC Irvine Appellate Litigation Clinic, where he argued an immigration case before the Ninth Circuit of Appeals. During

# ROBINSON CALCAGNIE, INC.

Law school, Mr. Olson served as a law clerk under the Honorable Theodor C. Albert of the United States Bankruptcy Court, Central District of California.  He also served as an extern for the United States Attorney's Office, Criminal Division in Santa Ana, California, and for the Appeals, Writs, and Trials section of the California Attorney General's Office in Los Angeles, California, where he drafted respondent's briefs to criminal appeals and successfully argued several cases before the Second District of the California Court of Appeal.

Mr. Olson is a member of the Orange County Bar Association, the Federal Bar Association where he served on the planning committee of its Young Lawyer Division, and was named a Super Lawyers Rising Star by *Super Lawyers Magazine* in 2024.

# EXHIBIT 2







**Tina Wolfson, Founding Partner**

Ms. Wolfson is one of only a handful of female founding partners of a nationwide class action firm. Six years after arriving in the United States as a political refugee from the former Soviet Union, Ms. Wolfson graduated from Columbia University and then Harvard Law School, both *cum laude*.  Three years later, Ms. Wolfson co-founded Ahdoot & Wolfson, now a nationally recognized law firm that specializes in complex and class action litigation, with a focus on privacy rights, consumer fraud, anti-trust, civil rights, and taxpayer rights. Ahdoot & Wolfson has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring hundreds of millions of dollars to the victims, and affecting real change in corporate behavior.

Ms. Wolfson's numerous leadership roles in privacy-related MDL's and consolidated cases include:

*Rivera v. Google LLC*, No. 2019-CH-00990 (Ill. Cir. Ct.) (biometric privacy) Hon. Edmond E. Chang and Hon. Anna M. Loftus. As co-lead counsel, achieved a $100 million non-reversionary cash settlement fund for Illinois consumers and overhauled Google's biometric privacy practices related to Google Photos. Prosecuted case in state and federa trial courts and the Seventh Circuit.

*In re Zoom Video Commc'ns, Inc. Privacy Litig.*, No. 3:20-cv-02155 (N.D. Cal.) (consumer privacy) Hon. Lucy J. Koh and Hon. Laurel Beeler.  As co-lead counsel managed a PSC of 3 firms and achieved $85 million non-reversionary cash settlement that refunded consumers 15% of their subscription payments and flat cash amounts for free accounts, plus robust injunctive relief overhauling Zoom's data collection and security practices.

*In re Google Location History Litigation*, No. 5:18-cv-05062 (N.D. Cal.) (location tracking) Hon. Edward J. Davila. As co-lead counsel, managed a PSC of 5 firms, achieved a $62 million non-reversionary common fund settlement and robust injunctive relief.

*In re Ambry Genetics Data Breach Litig.*, No. 8:20-cv-00791 (C.D. Cal.) (data breach) Hon. Cormac J. Carney. As co-lead counsel, achieved a settlement valued at over $20 million including a $12.25 non-reversionary common fund for 225,000 class members.

*In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, No. 1:15-mc-01394 (D.D.C.) (data breach) Hon. Amy Berman Jackson. As a PSC member, contributed to briefing and oral argument at trial level and appeal, achieved $63 million settlement.

*In re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.) (consumer data breach) Ret. Hon. Andrew J. Guilford. As co-lead counsel, managed a PSC of eight firms. Achieved a settlement valued at $150 million for a class of 15 million consumers.

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-02633 (D. Or.) (consumer data breach) Hon. Michael H. Simon. Plaintiff Executive Committee: research, briefing, oral argument, discovery

including technical and damage expert depositions, year-long settlement negotiation. Achieved the largest per capita settlement to date, valued at $74 million, including a $32 million non-reversionary fund.

Ms. Wolfson's efforts have shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon Johnson Coleman), Ms. Wolfson successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in every standing brief, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) and concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D.D.C.) (Hon. Amy Berman Jackson), Ms. Wolfson briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit.

Ms. Wolfson's successes in other types of complex class actions include:

*In re Apple Inc. Device Performance Litigation*, No. 5:18-md-02827 (N.D. Cal.) Hon.Edward J. Davila. As member of Executive Committee, helped achieve a nationwide settlement valued at $500 million in class action alleging Apple's practice of deploying software updates to iPhones that deliberately degraded the devices' performance and battery life.

*Alvarez v. Sirius XM Radio Inc.*, No. 2:18-cv-08605 (C.D. Cal.) Hon. James V. Selna. $420 million settlement in class action alleging a failure to honor lifetime subscriptions, despite being on appeal after the district court granted a motion to compel arbitration.

*Eck v. City of Los Angeles*, No. BC577028 (Cal. Super. Ct.) Ret. Hon. Ann Jones. $295 million class settlement in a case alleging that an 8% surcharge on Los Angeles electricity rates was an illegal tax.

Recognized for her deep class action experience, Ms. Wolfson frequently lectures on numerous class action topics across the country and was a guest lecturer on class actions at the University of California at Irvine Law School.

Ms. Wolfson was selected by the federal judiciary to serve as a Lawyer Representative for the Central District of California and was elected to the Conference Executive Committee for the Ninth Circuit. She also serves on the Merits Selectaion Panel for Central District of California, which vets and recommends candidates for Magistrate Judge openings. She is active in the Federal Bar Association, American Business Trials Lawyers Association, and serves on the board of Public Justice.

# EXHIBIT 3



# KAZEROUNI LAW GROUP, APC



## ABBAS KAZEROUNIAN

245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Tel: (800) 400-6808
Fax: (800) 520-5523
Email: ak@kazlg.com

Bar Admissions:

California, Colorado, District of Columbia, Illinois, New York, Texas, Michigan, and Washington.

Education:

California Western School of Law, San Diego, California  J.D., 2006

University of Plymouth, United Kingdom, Bachelor of Arts – 2000

The London Academy of Performing Arts - 2001

Abbas Kazerounian is one of the founding partners of Kazerouni Law Group, APC (KLG), which was established in 2007.  KLG is a consumer rights and personal injury firm with its headquarters in Costa Mesa, CA. KLG has offices in Arizona, California, Minnesota, Nevada, New Jersey, New York, Texas, Utah, and Washington. Mr. Kazerounian is an active member of several consumer rights organizations, he currently serves as the Secretary for the Consumer Attorneys of California (CAOC), and he is an adjunct professor at California Western School of Law where he teaches a three-credit course in Consumer Law. He is also regularly invited to speaking engagements nationwide on the topics of class action litigation and consumer law.

Mr. Kazerounian has been recognized as one of the Top 50 Orange County Super Lawyers 2021-2024 and the Top 100 Southern California Super Lawyers 2021-2024. He was selected by his peers as a Super Lawyer (a prestigious recognition is only given to up to 5 percent of the attorneys in the state) from 2016-2023 and as a Rising Star from 2013-2014. Mr. Kazerounian was also voted as a Rising Star by the San Diego Daily Tribune in 2012.

Mr. Kazerounian is regarded as a one of the preeminent consumer rights attorneys in Southern California. His depth of experience and knowledge in this practice area along with his trial skills, make Mr. Kazerounian one of the premier advocates within this field of law. Abbas has been responsible for over 650 published opinions, and he has successfully argued before the Ninth Circuit of Appeals on numerous occasions. Specifically, he has presented oral argument before the Ninth Circuit Court of Appeals in several landmark cases, such as *Marks v. Crunch San Diego, LLC*, No. 14-56834 (December 6, 2016), with a unanimous published decision in favor of client, *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018); *Knutson v. Sirius XM Radio, Inc.*, No. 12-56120 (February 7, 2014); and three times in *Afewerki v. Anaya Law Group*, Nos. 15-55100 (April 7, 2017), 18-56510 (May 15, 2019), and 19-56486 (Jan. 21, 2021).

**HONORS & AWARDS:**

Wiley W. Manuel Award by State Bar of California for Pro Bono Work, 2017; Voted Rising Star by San Diego Transcript in 2012; Voted Rising Star in Super Lawyers Magazine, 2013-2015; Nominated to Top 40 under 40 by The National Trial Lawyers 2018-2019; Selected as a Super Lawyer by Super Lawyer Magazine 2016-present; Selected by Super Lawyers Magazine as Top 100 in Southern California in 2021-present; Selected by Super Lawyers Magazine as Top 50 in Orange County 2021-present; Received the Presidential Award of Merit from Consumer Attorneys of California (CAOC) in November 2022.

**PUBLICATIONS**:

Articles: *The Impact of Epic Systems Corp. v. Lewis: How Arbitration Will Impact Consumers Going Forward*, The Gavel, 2018; *Material Considerations When Screening For A Class Representative*, Plaintiff Magazine, 2020; *Collateral Damage, Beyond the Personal Injury: When Creditors and Collection Agencies Stalk Your Client*, Plaintiff Magazine, 2017; *Finding A Balance*, Nutrition Business Journal, Special Edition, 2016; *FDCPA: The Forgotten Statute*, Daily Journal, 2016; *Principles of Litigating Consumer Class Actions*, The Advocate, 2015.

Books: *Boy with Two Lives*, 2015; and *On Two Feet and Wings*, 2013.

**SPEAKING ENGAGEMENTS**:

Presented at numerous events on various legal topics, including: 2023 Mass Torts Made Perfect on Mass Arbitrations, 2023 CAOC Sonoma Seminar on Recent Trends and Developments in Mass Torts and Class Actions;  2022 CAOC Annual Convention on Hot Topics Surrounding Consumer Class Actions; 2022 Mass Torts Made Perfect Fall 2022 Seminar on the Nuts and Bolts of Mass Arbitrations; 2021 CAOC Annual Convention on Using Arbitration as a Sword; 2021 CAOC Sonoma Virtual Conference on Nuts & Bolts of Fighting Arbitration; 2021 Palm Springs Seminar Panel on Hot Topics In Mass Tort And Class Actions: What You Don't Know Might Get You Burned. Spoke on *Recent Developments in Labeling Class Actions*; Fundamentals of the FDCPA, NCLC 2019 Las Vegas Conference; "The interplay between Personal Injury and Class Actions," CAOC, Sonoma Seminar 2019; Mass Torts Made Perfect on Modern Trends in the TCPA, April of 2019; Consumer Financial Services Committee meeting entitled, *TCPA Litigation: Where Is It Heading Now?*, January 11, 2019; panelist at a webinar, *TCPA Takes A New Turn With the 9th Circuit's Ruling in Marks v. Crunch San Diego, LLC*, hosted by the Consumer Financial Services Committee of the American Bar Association, October 10, 2018; National webinar sponsored by Ballard Spahr LLP, entitled, *From Both Sides: Plaintiff and Defense Perspectives on the TCPA*, August 2018; Inland Empire CAOC Convention on "Class Action Hot Topics," May 2018; National Webinar by the ABA Consumer Financial Services Committee on TCPA Update – "The D.C. Circuit's TCPA Decision on the FCC Ruling, March 22, 2018; moderated the Judges Panel on Class Action Trends and Federal Litigation Trends at the NCLC Conference, March 2016; lectured on the TCPA before the ABA Business Law Section, Consumer Financial Services Committee in January 2016 at an event in Utah entitled, "Impact of the FCC's 2015 Rulings on TCPA Litigation"; Class Action Trends at the CAOC 2015 Conference in San Francisco, CA; panelist in a webinar, ABA Telephonic Brown Bag re: TCPA, August 25, 2015; ABA TCPA National Webinar (Consumer Protection, Privacy & Information Security, Private Advertising Litigation, and Media & Technology Committees), September 2013.

Speaker at various law schools, including Whittier Law School, Chapman Law School, University of California, Irvine, and California Western School of Law.

Often called upon to appear on radio and television shows to offer legal analysis, including on Dr. Drew Midday Live and Fox 5.

Adjunct professor at California Western School of Law teaching Consumer Law course.

# KAZEROUNI
## LAW GROUP, APC



**MONA AMINI**
Partner

Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
Email: mona@kazlg.com

Bar Admissions:
California and Nevada

Mona Amini is a Partner with Kazerouni Law Group, APC (KLG), which was established in 2007.  KLG is a consumer rights and personal injury firm based in Costa Mesa, California. KLG has additional offices and attorneys located in Arizona, California, Minnesota, Nevada, New Jersey, New York, Texas, Utah, and Washington.

Ms. Amini has litigated numerous consumer rights cases, including individual matters as well as nationwide class actions against major corporations, on behalf of clients with claims arising out of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, Telephone Consumer Protection Act, as well as other federal and state consumer protection statutes, including California data breach statutes such as the California Consumer Privacy Act (CCPA) and the California Confidentiality of Medical Information Act (CMIA).

Ms. Amini is a member of several local and national associations, including the Consumer Attorneys of California, National Association of Consumer Advocates, Orange County Bar Association, Orange County Trial Lawyers Association. In 2019, the Consumer Attorneys of California (CAOC) selected Ms. Amini from a pool of applicants for its 2019 Leadership Academy. Also, in 2022, Ms. Amini was chosen for membership into The National Trial Lawyers: Top 40 Under 40.

Ms. Amini was also selected by selected by Super Lawyers Magazine 2021-2024 for its list of Southern California Rising Stars, an honor reserved for those lawyers who exhibit excellence in practice. Only 2.5% of attorneys in Southern California receive this distinction.

## KAZEROUNI LAW GROUP'S CLASS ACTION LITIGATION EXPERIENCE:

KLG has over 15 years of experience in representing plaintiffs in consumer litigation.  KLG is a highly regarded class action firm and has litigated over 15,000 individual consumer rights cases. Some of KLG's more notable cases in the class action space include: *Vakilzadeh v. The Board of the Trustees of the California State University*, No. 20STCV23134 (Sup. Ct. Los Angeles) (denying in part and granting in part demurrer in COVID-19 student refund litigation; and appointed as interim co-lead class counsel); *Hill v. Quicken Loans, Inc.*, No. ED CV 19-0163 FMO (SPx), 2020 U.S. Dist. LEXIS 140980 (C.D. Cal. Aug. 5, 2020) (denying defendant's motion to dismiss and motion to compel arbitration of TCPA case); *Holt v. Foodstate, Inc.*, No. 1:17-cv-00637-LM, 2020 U.S. Dist. LEXIS 7265 (D.N.H. Jan. 16, 2020) (Class counsel in finally approved false advertising action, with a common fund $2,100,000); *Delisle v. Speedy Cash*, No. 3:18-CV-2042-GPC-RBB, 2019 U.S. Dist. LEXIS 96981 (S.D. Cal. June 10, 2019) (denying defendant's motion to compel arbitration, for a second time); *Smith v. One Nev. Credit Union*, 2:16-cv-02156-GMN-NJK, 2019 U.S. Dist. LEXIS 54963 (D. Nev.) (finally approved Fair Credit Reporting Act class action settlement for $600,000 on March 29, 2019); *Swigart v. Parcel Pending, Inc.*, 3:18-cv-02238-BEN-WVG (S.D. Cal.) (granting final approval to surreptitious call recording class action settlement); *McCurley et al. v. Royal Seas Cruises, Inc.*, 17-cv-00986-BAS-AGS (S.D. Cal.) (certified class achieved by motion in TCPA class action on behalf of over 2 million class members, on July 31, 2018); *Barrow v. JPMorgan Chase Bank, N.A.*, 1:16-cv-03577-AT (N.D. Ga.) (Class counsel in TCPA class action settlement with $2,250,000 common fund, finally approved on

November 6, 2018); *Giffin v. Universal Protein Supplements Corporation d/b/a Universal Nutrition et al.*, No. BC613414 (Sup. Ct. Los Angeles) (finally approved class action settlement alleging violation of California Made in USA law); *Medeiros v. HSBC Card Services, Inc. et al.*, 2017 U.S. LEXIS 178484 (C.D. Cal. Oct. 23, 2017) (finally approved surreptitious call recording class settlement for $13,000,000); *Hooker v. Sirius XM Radio Inc.*, 4:13-cv-00003-AWA-LRL (E.D. Va., December 22, 2016) (co-lead counsel in finally approved TCPA class action settlement with fund of $35,000,000); *Gehrich v. Chase Bank, N.A.*, 12-cv-5510 (N.D. Cal.) (co-lead counsel in finally approved TCPA class action settlement for $34,000,000); *Newman v. AmeriCredit Financial Services*, 11-cv-03041-DMS-BLM (S.D. Cal.) (Co-lead counsel in finally approved TCPA settlement for over $6,500,000 on March 28, 2016); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016) (order affirming decision finding unaccepted offer of judgment under Fed. R. Civ. P. 68 did not moot the plaintiff's individual claims); *Macias v. Water & Power Community Credit Union*, BC515936 (Sup. Ct. Los Angeles) (final approval in Rosenthal Fair Debt Collection Practices Act class settlement in 2016); *Mount v. Wells Fargo Bank, N.A.*, BC395959 (Sup. Ct. Los Angeles) (final approval of surreptitious call recording class action for $5,600,000); *Oxina v. Lands' End, Inc.*, 3:14-cv-02577-MMA-NLS (S.D. Cal. 2016) (finally approved settlement under California Made in the USA statute); *LaPuebla v. BirchBox, Inc.*, 3:15-cv-00498-BEN-BGS (S.D. Cal. 2016) (finally approved settlement in auto-renewal violation action); *Mills v. HSBC Bank Nevada, N.A.*, Case No. 12-CV-04010-SI (N.D. Cal.) (finally approved TCPA class action settlement for $39,975,000); *Hoffman v. Bank of America Corporation*, 12-CV-00539-JAH-DHB (S.D. Cal.) (co-lead counsel in California class action settlement under Penal Code 632, *et seq.*, with a common fund of $2,600,000, finally approved on November 6, 2014); *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH (BGS) (Counsel for a plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; *In Re: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 11-md-2286-MMA (MDD) (S.D. Cal.) (Counsel for a plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; finally approved for $18,000,000); *Malta, et al. v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290-IEG (BLM) (Co-lead counsel, TCPA settlement of $17.1 Million finally approved in 2013).

Prior experience in products liability litigation includes obtaining a $2,500,000 settlement in 2008 in *Mei Lu Hwei, et al. v. American Honda Motor Co., Inc., et al.*, BC401211 (Sup. Ct. Los Angeles).

Served as appointed Co-Lead Counsel in a federal securities class action in *Jiao et al. v. Merrill Lynch Pierce Fenner & Smith, Inc. et al.*, No. 3:17-cv-00409-L-MDD (S.D. Cal.).

Presented oral argument before the Ninth Circuit Court of Appeals in *Marks v. Crunch San Diego, LLC*, No. 14-56834 (December 6, 2016), with a unanimous published decision in favor of client, *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018); *Knutson v. Sirius XM Radio, Inc.*, No. 12-56120 (February 7, 2014); and three times in *Afewerki v. Anaya Law Group*, Nos. 15-55100 (April 7, 2017), 18-56510 (May 15, 2019), and 19-56486 (Jan. 21, 2021).

Prior experience in data breach class actions includes: *McAfee et al. v. Treasure Island, LLC*, No. A-18-772302-C, 2019 Nev. Dist. LEXIS 421 (D. Nev.) (finally approved in data breach action, May 23, 2019); *Santana, et al. v. Rady Children's Hospital – San Diego*, Case No. 37-2014-0002241 (Super. Ct. Cal. Feb. 8, 2019) (finally approved California Confidentiality of Medical Information Act (CMIA) class action that settled shortly before trial, providing approximately 14,100 class members with the benefit in the form of $6,764,616 of credit monitoring and identity theft protection packages, $5,000,000 cash payment, and $1,800,000 in remedial measures, for a total value at over $13.5 million); *R.O., et al. v. Rady Children's Hospital – San Diego*, No. 37-2020-00011841-CU-BT-CTL (California CMIA class action settlement, granted final approval on December 10, 2021); *Newman v. JM Bullion, Inc.*, No. BCV-21-100436-BCB (CCPA data breach class action, granted final approval on June 30, 2022); *Kolar v. CSI Financial Services, LLC*, No. 37-2021-00030426-CU-NP-CTL (Super. Ct. Cal. Jan. 20, 2023) (finally approved data breach class action settlement); *Stoffers v. Dave, Inc.*, No. 20STCV35381 (California Consumer Privacy Act (CCPA) data breach class action settlement, granted final approval), *In re Planned Parenthood Los Angeles Litigation*, Lead Case No. 21STCV44106 (data breach class action, KLG appointed as Liaison Counsel); *Nulf v. Alvaria, Inc., et al.*, Case No. 1:23-cv-10999 (D. Mass.) (Ms. Amini appointed Liaison Counsel and Interim Class Counsel); *McCartney, et al. v. Ventura County Credit Union*, No. 2023CUPP011569 (Ms. Amini appointed to Plaintiffs' Executive Committee serving as Interim Class Counsel), *In re loanDepot Data Breach Litigation*, No. 8:24-cv-00136-DOC-JDE (C.D. Cal.), as well as other pending matters.

# EXHIBIT 4

**LARSON**

| **Larson LLP** | 555 South Flower Street, 30th Floor | **P** 213.436.4888 |
| larsonllp.com | Los Angeles, CA 90071 | **F** 213.623.2000 |

Larson LLP is a boutique litigation firm with 50 lawyers across four offices in the United States and United Kingdom. Stephen G. Larson and Robert C. O'Brien founded Larson LLP in January 2016 with only 9 other lawyers. Determined to build a law firm that could win any case, against any opponent, in any jurisdiction, the firm focused on courtroom results as its primary means to drive growth. Drawing on Stephen Larson's experience as a former Assistant United States Attorney, U.S. Magistrate Judge, U.S. District Judge, and extensive trial and appellate experience in private practice, and Robert O'Brien's extensive government and AmLaw firm leadership experience, Larson LLP developed a reputation as one of the most skillful trial litigation firms in the country, attracting additional attorney talent from the countries' top law firms, the judiciary, and the government.

Larson LLP now represents plaintiffs and defendants in numerous areas of practice, including Appellate litigation, Complex Civil and Class Action litigation, Antitrust and Competition litigation, Civil Rights Litigation, Intellectual Property litigation, International Arbitration, Media and Entertainment litigation, Partnership Disputes and Securities litigation, Real Estate litigation, Internal Investigations and Compliance, and White-Collar Defense and Government Investigations.

Larson LLP's representative clients have included Walt Disney Co., LACERA, Malouf Home, Aimco, Cedars Sinai, City of Hope, CR&R Environmental Services, IBM, HBO, Live Nation Entertainment, FedEx, Korbel Champagne Cellars, Deutsch Family Spirits, Mercer Global Advisors, Cathay Bank, Mission Bank, Eurasian Natural Resources Corporation, Orange County Water District, Majestic Realty Co., Hewlett Packard, Sunrun, and World Oil; several States and Counties; current and former federal, state, and local government officials; and numerous C-suite executives from Fortune 500 companies.

Larson LLP's talented attorney bench has been recognized by the following:

- Ranked by Chambers USA in the guide's highest tier as a Litigation: Specialist Firm; two partners ranked for White-Collar Crime & Government Investigations;
- Ranked a Tier 1 Firm in Los Angeles for Commercial Litigation by Best Lawyers® "Best Law Firms," with nine partners recognized in The Best Lawyers in America© (2015-present);
- Named a Top Boutique for litigation in California by the *Daily Journal* (2021);
- Mr. Larson consistently selected to the *Daily Journal's* annual list of Top 100 Lawyers in California (2016-present), and Partner Hilary Potashner named to annual list of Top Women Attorneys (2022-2024);
- Mr. Larson named White Collar Crime/Investigations Litigator of the Year (2022) by Benchmark Litigation and five other partners recognized as Litigation Stars (2019- present);
- Partner (Hilary Potashner) named 2020 Defense Attorney of the Year by the Los Angeles County Bar Association Criminal Justice Section; and
- Seven partners recognized by the *Los Angeles Business Journal* as among the most influential people, leading litigators, and top women attorneys in Los Angeles (2016-present).

Page 2

**Stephen G. Larson**

Mr. Larson is admitted to practice in California and District of Columbia state courts, as well as before the U.S. Supreme Court, U.S. Court of Appeals for the Federal, First, Eighth, Ninth, Tenth Circuits; U.S. Court of Federal Claims; Court of International Trade; and the U.S. District Court for the Central, Eastern, Northern, and Southern District of California.

As a federal judge for nearly a decade, Mr. Larson adjudicated over a thousand cases, including:

- *United States v. Nazario*: a Military Extraterritoriality Jurisdiction Act case involving U.S. Marines accused of manslaughter during the battle of Fallujah;
- *United States v. Duro*: a dispute involving the U.S. Bureau of Indian Affairs' efforts to close a major migrant worker camp on the Torres Martinez Indian Reservation in the Coachella Valley; and
- *Siegel v. Warner Bros. Entertainment, Inc.*: a dispute regarding the determination of ownership of copyrights related to Superman.

As a Partner in private practice, numerous courts have relied on Mr. Larson's experience on the federal bench to resolve complex discovery disputes. Mr. Larson has been appointed as a Special Master and Discovery Referee in numerous matters, including the California State Court Opioid litigation (appointed by Judge Peter Wilson, Orange County Superior Court) and the JUUL Marketing MDL (appointed by Judge William Orrick, Northern District of California).

In the last several years, Mr. Larson has helped obtain over $500 million in recoveries for clients (plaintiffs and defendants) in an array of complex disputes. These recoveries include a $154 million settlement in *In Re: Snap Inc. Securities Litigation*, No. 2:17-cv-03679; $65 million from San Bernardino County for civil rights claims involving allegations of a retaliatory investigation and malicious prosecution in *Colonies Partners LP v. County of San Bernardino*, No. 5:18-cv-00420; $65 million from a regional healthcare provider and its founder in *United States ex rel. Karin Berntsen v. Prime Healthcare Services, Inc.*, et al., No. 11-cv-08214; and over $40 million for the State of Arizona and the State of Oklahoma from Volkswagen AG, et al. as a result of the "clean diesel" scandal.

Most recently, Larson LLP, Lieff Cabraser Heimann & Bernstein LLP, and Aitken Aitken Cohn (as co-lead class counsel) recovered $95 million for class plaintiffs in *Gutierrez, Jr. et al. v.Amplify Energy Corp. et al.* No. 8:21-cv-01628, the lawsuit arising from the pipeline break and oil spill of the coast of Southern California.



Mr. Larson received his Bachelor of Science in Foreign Service from Georgetown University and his Juris Doctor degree from the University of Southern California, Gould School of Law.

Respectfully submitted,

Stephen G. Larson
**Larson LLP**
555 S. Flower Street
30th Floor Los Angeles, CA 90071
Tel: (213) 436-4864
Email: slarson@larsonllp.com

# EXHIBIT 5



# FIRM RESUME /

# BIOGRAPHY OF GARY M. KLINGER



Milberg Coleman Bryson Phillips Grossman ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> - THE NEW YORK TIMES

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## CYBERSECURITY & DATA PRIVACY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients — both large and small — to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

### $4 Billion Settlement

In re: Prudential Insurance Co. Sales Practice Litigation

### $3.2 Billion Settlement

In re: Tyco International Ltd., Securities Litigation

### $1.14 Billion Settlement

In Re: Nortel Networks Corp. Securities Litigation

### $1 Billion-plus Trial Verdict

Vivendi Universal, S.A. Securities Litigation

### $1 Billion Settlement

NASDAQ Market-Makers Antitrust Litigation

### $1 Billion Settlement

W.R. Grace & Co.

### $1 Billion-plus Settlement

Merck & Co., Inc. Securities Litigation

### $775 Million Settlement

Washington Public Power Supply System Securities Litigation

### $586 Million Settlement

In re: Initial Public Offering Securities Litigation

# GARY M. KLINGER

**Gary M. Klinger** is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[1] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[2] Law360 recently highlighted Mr. Klinger's work in the privacy space.[3]

Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country.[4] Mr. Klinger and his firm are largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space.[5] Mr. Klinger has also successfully litigated privacy class actions through class certification. *E.g., Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018).

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than one hundred (100) class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);

- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);

- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).

---

[1] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.

[2] *See* https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[3] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

[4] See, e.g., *Isiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JDE (C.D. Cal.) (where Mr. Klinger is co-lead counsel in a data breach involving more than 17 million consumers); *In re MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).

[5] *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

# LOCATIONS

### PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

### FLORIDA
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

### MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

### NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

### SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM

