**ROBINSON CALCAGNIE, INC.**
Daniel S. Robinson (SBN 244245)
*drobinson@robinsonfirm.com*
Michael W. Olson (SBN 312857)
*molson@robinsonfirm.com*
19 Corporate Plaza Drive
Newport Beach, California
(949) 720-1288; Fax: (949) 720-1292

**LARSON, LLP**
Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN 249203)
*ak@kazlg.com*
Mona Amini (SBN 296829)
*mona@kazlg.com*
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger (*Pro Hac Vice*)
*gklinger@milberg.com*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re loanDepot Data Breach Litigation* | Case No.: 8:24-cv-00136-DOC-JDEx |
| | Assigned to Hon. David O. Carter |
| This Document Relates to: All Cases | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| | [Filed concurrently with Declarations and Proposed Order] |
| | Date:        August 18, 2025<br>Time:        8:30 a.m.<br>Courtroom:  10A |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 18, 2025, at 8:30 a.m., in Courtroom 10A of the above-captioned Court before the Honorable David O. Carter, Plaintiffs Alphonso Woods, David Ware, Deborah McPhail, Josh Krieghauser, Daroya Isaiah, Joshua Beller, Maurice Beckwith, Robert Lash, Ryan Azinger, Lorenz Praefcke, Varun Singh, Debra Coe, Loretta Montgomery, Vidal Hernandez, Tracy Brown, Branislav Sasic, Jessica Schuler, Kyle Nunnelly, Nailah Ricco-Brown, and Matthew McFall (collectively, "Plaintiffs"), will and hereby do move for an Order granting Final Approval of the Class Action Settlement Agreement in this case, finally approving the Settlement as fair, reasonable, and adequate, and in the best interest of the Class.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Joint Declaration of Daniel S. Robinson, Tina Wolfson, Abbas Kazerounian, Stephen G. Larson, and Gary M. Klinger ("Joint Decl."), the Declaration of Steven Weisbrot on behalf of Angeion Group ("Weisbrot Decl."), the Settlement Agreement previously filed with the Court (Dkt. 84), the argument of counsel at the hearing of this Motion, all papers and records on file in this matter, and any other matters and argument the Court may consider at the time of the Final Approval Hearing.

Dated: June 27, 2025                                    Respectfully submitted,

*/s/ Daniel S. Robinson*
Daniel S. Robinson
Michael W. Olson
ROBINSON CALCAGNIE, INC.
19 Corporate Plaza Drive
Newport Beach, California
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

*/s/ Stephen G. Larson*
Stephen G. Larson
LARSON, LLP

555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
(213) 436-4864; Fax: (213) 623-2000
slarson@larsonllp.com

*/s/ Tina Wolfson*
Tina Wolfson
Deborah De Villa
AHDOOT & WOLFSON, PC
2600 W Olive Ave, Ste 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
ddevilla@ahdootwolfson.com

*/s/ Abbas Kazerounian*
Abbas Kazerounian
Mona Amini
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523
ak@kazlg.com
mona@kazlg.com

*/s/ Gary M. Klinger*
Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

***Class Counsel***

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ........................................................................................ 2

   A.   The Data Breach and the Procedural History of this Action ............... 2

   B.   Settlement Negotiations and Mediation .............................................. 3

   C.   Preliminary Approval and Plaintiffs' Fee Motion ............................... 4

III.  THE SETTLEMENT TERMS .................................................................. 5

   A.   The Settlement Class and Release ....................................................... 5

   B.   The Settlement Benefits ...................................................................... 6

       1.   Financial Monitoring ............................................................... 7

       2.   Cash Payments to Settlement Class Members .......................... 7

       3.   loanDepot's Business Practice Changes .................................. 9

       4.   Attorneys' Fees and Costs and Service Awards ..................... 10

       5.   Total Settlement Value .......................................................... 10

IV.  FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED ......... 11

   A.   Class Certification ............................................................................ 11

   B.   The Settlement is Fundamentally Fair, Reasonable, and Adequate ............... 11

       1.   The Strength of Plaintiffs' Case and the Risk, Expense,
            Complexity, and Likely Duration of Future Litigation ......... 12

       2.   The Risk of Maintaining Class Action Status Through Trial ............... 13

       3.   The Settlement is an Extraordinary Result for the Class ....... 13

       4.   The Extent of Discovery Completed and the Stage of
            Proceedings ............................................................................ 15

       5.   The Experience and Views of Counsel .................................. 16

       6.   The Class Members' Positive Reaction to the Settlement ...... 16

       7.   The Rule 23(e)(2) Factors are Satisfied ................................. 17

           a)   The Class Representatives and Class Counsel Adequately
               Represented the Class .................................................. 18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

b)   The Settlement is Non-Collusive and Was Negotiated at
Arm's Length ........................................................................ 18

c)   The Relief to the Class is Adequate ............................................. 19

d)   The Settlement Treats Class Members Equitably ........................ 20

V.   CONCLUSION ...................................................................................... 20

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**CASES**

*Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*,
No. 2:18-cv-08348-CJC-FFM, 2021 WL 606245 (C.D. Cal. Jan. 25, 2021) ... 10, 11

*Campbell v. Facebook Inc.*,
No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ................ 13

*Coopers v. Lybrand & Livesay*,
437 U.S. 463 (1978), ...................................................................................... 13

*Corona v. Sony Pictures Ent'mt., Inc.*,
No. 14-cv-09600 RGK (C.D. Cal. 2016) ........................................................ 14

*Diaz v. Google LLC*,
No. 5:21-cv-03080 (N.D. Cal. Aug. 4, 2022) ................................................. 13

*Gaston v. FabFitFun, Inc.*,
No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........... 12

*General Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ...................................................................................... 17

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 17-CV-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ....... 12

*Hashemi v. Bosley, Inc.*,
No. CV 21-946 PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ....... 12

*In re Anthem, Inc. Data Breach Litigation*,
No. 5:15-md-02617-LHK, (N.D. Cal. 2017) ................................................... 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................... 18

*In re Experian Data Breach Litigation*,
No. 8:15-cv-01592 (C.D. Cal May 10, 2019) ................................................. 15

*In re Google LLC St. View Elec. Commc'ns Litig.*,
No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .............. 13

*In re Google Plus Profile Litig.*,
No. 518CV06164EJDVKD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ....... 14, 15

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) .................................................................... 11

*In re Linkedin User Priv. Litig.*,
309 F.R.D. 573  (N.D. Cal. 2015) ............................................................. 14, 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................ 15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .................... 12

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .......... 12

*In re: Vizio, Inc., Consumer Privacy Litigation*,
    8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017)........................................ 14, 15

*Koenig v. Lime Crime, Inc.*,
    No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ....... 12

*Lim v. Transforce, Inc.*,
    No. LA CV19-04390 JAK, 2022 WL 17253907 (C.D. Cal. Nov. 15, 2022).......... 18

*McDonald, et al. v. Kiloo A/S, et al.*,
    No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021) .................................................. 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 16

*Officers for Just. v. Civ. Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)................................................................................... 11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................. 11

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)................................................................................... 11

**STATUTES**

California Consumer Privacy Act, Cal. Civ. Code §§ 1798.150, *et seq*. ("CCPA") .... 1

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 11.423 ...................................................... 15

Manual for Complex Litigation (Fourth) § 13.12 ....................................................... 15

**RULES**

Federal Rule of Civil Procedure 23 .................................................................. passim

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court preliminarily approved the proposed Settlement, and the Settlement Administrator has disseminated notice to Class Members in accordance with the approved Notice Plan. Now, with the instant Motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement[1] and approve it as fair, reasonable, adequate, and in the best interest of the Class.

After hard-fought, arm's-length negotiations—including a full-day mediation with Hon. Jay C. Gandhi (Ret.) and six months of negotiations between counsel thereafter—Plaintiffs secured a Settlement that provides significant cash payments to Class Members and protects them against future harm caused by the Data Breach. The Settlement establishes a $25 million non-reversionary Settlement Fund that will be used to provide Participating Settlement Class Members with a Monetary Payment, reimbursement of Out-of-Pocket Costs, Financial Monitoring and Identity Theft Insurance Services ("Financial Monitoring"), and an additional California Subclass Payment to California residents for their California Consumer Privacy Act, Cal. Civ. Code §§ 1798.150, *et seq*. ("CCPA") claims. The Settlement also delivers value to Class Members far beyond that amount, considering the value of the Financial Monitoring and the remedial efforts taken by loanDepot, estimated to cost loanDepot $9,341,000.00. As explained in greater detail herein, considering the 207,845 Financial Monitoring claims submitted by Class Members as of June 24, 2025, Class Counsel conservatively estimate the total value of the Settlement Benefits is presently valued at $98,529,771.35.

Through the Settlement, each Class Member is eligible to submit a claim for: (1) two years of Financial Monitoring, (2) up to $5,000 for Out-of-Pocket Costs fairly

---

[1] Unless otherwise defined, all capitalized terms have the same meaning set forth in the Settlement Agreement ("SA" or "Agreement"). Dkt. 84.

traceable to the Data Breach, (3) a pro rata Monetary Payment to compensate for harms suffered as a result of the exposure of their PII during the Data Breach, and (4) a California Subclass Payment of up to $150 for California Subclass Members. SA ¶ 76.

The Court-approved Notice Plan provided for dissemination of Notice to the Class by U.S. mail and email, and the creation of a Settlement Website where Notice was provided during the Claims Period. SA ¶¶ 91–97; Declaration of Steven Weisbrot of Angeion Group Re: Implementation of the Notice Plan and Settlement Administration ("Weisbrot Decl.") ¶¶ 7-16.

The reaction from Class Members has been overwhelmingly positive and strongly supports final approval. As of June 24, 2025, the Participating Settlement Class Members have submitted 211,642 Claims via the claims process. *Id.* ¶ 18. The exclusion and objection deadlines were April 27, 2025. Out of the 16,924,007 Settlement Class Members, the Settlement Administrator received only 249 valid Requests for Exclusion and no objections to the Settlement. *Id.* ¶¶ 23-24.

In light of the valuable benefits conveyed to Class Members and the significant risks faced in continued litigation, the terms of the Settlement are fair, reasonable, and adequate, and merit final approval.

## II.   BACKGROUND

### A.   The Data Breach and the Procedural History of this Action

loanDepot is an Irvine, California-based nonbank holding company and the nation's fifth largest retail mortgage lender, funding more than 27,000 consumer mortgages per month. Plaintiffs allege it failed to adequately secure and safeguard its vulnerable networks, resulting in a massive data breach where approximately 16.9 million customers' PII was accessed and exfiltrated by unauthorized parties. According to loanDepot's January 8, 2024 announcement, between January 3 and 5, 2024, an unauthorized third party gained access to loanDepot's systems which maintained Plaintiffs' and Class Members' names, addresses, email addresses, financial account

1    numbers, Social Security numbers, phone numbers, and dates of birth.

2        Following the Data Breach announcement, 20 putative class action complaints

3    were filed against loanDepot. The majority of Plaintiffs' counsel self-organized and

4    proposed that the Court appoint Interim Class Counsel. In accordance with Rule 23(g),

5    Daniel S. Robinson of Robinson Calcagnie, Inc., Tina Wolfson of Ahdoot & Wolfson,

6    PC, Abbas Kazerounian of Kazerouni Law Group APC, Stephen G. Larson of Larson

7    LLP, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC were

8    appointed as Interim Co-Lead Counsel. Dkts. 53, 55. On June 3, 2024, Plaintiffs filed

9    a Consolidated Class Action Complaint against loanDepot. Dkt. 69.

10        **B.**    **Settlement Negotiations and Mediation**

11        The Parties began engaging in arm's-length settlement discussions and

12    negotiations before Plaintiffs filed their Consolidated Complaint and, on June 6, 2024,

13    participated in a full-day mediation before Hon. Jay C. Gandhi (Ret.) who was, at the

14    time, affiliated with JAMS. Joint Decl. ¶¶ 18-25. In advance of mediation, the Parties

15    exchanged mediation briefs addressing the claims and defenses in detail, and

16    loanDepot provided information and documents concerning the cause and scope of the

17    Data Breach and remedial efforts. *Id.* Following mediation, the Parties continued to

18    engage in arm's-length discussions through Judge Gandhi. These efforts resulted in an

19    agreement on the general contours of a class settlement. Dkt. 78.

20        The Parties then exchanged multiple drafts of the Settlement Agreement and

21    resolved several disagreements concerning its terms. Joint Decl. ¶ 21. The Parties

22    conducted confirmatory discovery, including a Rule 30(b)(6) deposition of

23    loanDepot's Chief Information Security Officer concerning the cause and scope of the

24    Data Breach and loanDepot's business practice changes, and written confirmatory

25    discovery concerning loanDepot's financial condition. *Id.* ¶ 22. Class Counsel also

26    secured multiple bids from nationally recognized class action settlement administrators

27    and financial monitoring companies to select the Settlement Administrator and product

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    best suited for this Settlement. *Id.* ¶ 23.

2        The Settlement resolves all claims, actions, and proceedings asserted, or that
3    could be asserted, against loanDepot arising out of or related in any way to the alleged
4    Data Breach, by or on behalf of members of the Settlement Class, excluding the
5    Settlement Class Members who requested exclusion from the Settlement Class after
6    receiving notice of this Settlement.

7        **C.    Preliminary Approval and Plaintiffs' Fee Motion**

8        On December 2, 2024, Class Counsel filed a motion for preliminary approval of
9    the Settlement (Dkt. 83), which the Court granted on January 13, 2025. Dkt. 88. Since
10   that time, Class Counsel have worked with Angeion to ensure the Notice Plan was
11   implemented and the claims process is conducted in adherence to the Preliminary
12   Approval Order. Joint Decl. ¶ 40. Class Counsel audited the Settlement Website,
13   reviewed weekly reports from and conferred with Angeion, responded to inquiries
14   from Class Members, and will continue to expend significant efforts to ensure the
15   benefits reach Class Members following final approval. *Id.* ¶ 40. The Settlement
16   Administrator opines that approximately 99% of the Class Members received Class
17   Notice and were provided opportunity to submit a claim during the Claims Period.
18   Weisbrot Decl. ¶¶ 28-29.

19       On March 21, 2025, Plaintiffs filed their Motion for Award of Attorney's Fees,
20   Costs, and Service Awards (the "Fee Motion"). Dkt. 89. In the Fee Motion, Plaintiffs
21   explained that the value of the Settlement Benefits was estimated to be nearly $49
22   million based on current claims figures. Dkt. 89 at 6-7. This estimate was based on the
23   $25 million non-reversionary Settlement Fund; the $9,341,000.00 remedial efforts
24   taken by loanDepot as a result of the Data Breach (SA ¶ 86); and the additional value
25   of $14,620,012.20 of Financial Monitoring for each Participating Class Member, based
26   upon the 47,340 Financial Monitoring claims submitted by Class Members as of the
27   Fee Motion (which has since increased). SA ¶¶ 76, 87; *see* Dkt. 89 at 6-7. Based on the

28

Claims submitted at the time of the Fee Motion, Class Counsel's requested attorney's fees of $7,500,000 amounted to approximately 15% of the estimated Settlement Value. Joint Decl. ¶ 46.

Class Counsel's Fee Motion also provided the Court with sufficient information to perform a lodestar cross-check, identifying the 3,976.5 hours incurred by Plaintiffs' counsel at the time, and a conservatively calculated collective lodestar of $3,296,015.80, which represented a modest multiplier of 2.28. Since the filing of the Fee Motion, the lodestar of Class Counsel and other Plaintiffs' counsel has increased 332.2 additional hours, largely spent working with the Settlement Administrator on overseeing the Settlement, responding to Class Member inquiries, and otherwise overseeing the Settlement towards final approval. This has resulted in a total of 4,308.7 hours spent on this litigation and a lodestar of $3,557,273.90. Thus, the requested attorneys' fees amount to just 7.6% of the current estimated Settlement Value. This lodestar and multiplier are fair and reasonable in light of the significant risks Class Counsel faced, the contingent nature of representation, the complexity of the issues presented, the total value of the Settlement Benefits, and the excellent results achieved for the benefit of the Settlement Class. Concurrently with Plaintiffs' Fee Motion, each Class Representative submitted a declaration detailing their efforts throughout the litigation in support of their request for the Court to grant modest Service Awards of $2,500 to each of the Class Representatives to compensate them for their participation, effort, and risk associated with pursuing this litigation.

## III. THE SETTLEMENT TERMS

### A. The Settlement Class and Release

The proposed Settlement Class is defined as:

> The approximately 16,924,007 individuals in the United States who received notice from loanDepot that their data may have been impacted or otherwise compromised by the Data Breach and are identified on the Settlement Class List.

SA ¶¶ 47, 58. Plaintiffs also seek to certify the following California Subclass:

The approximately 2,449,083 Settlement Class Members who were residents of the State of California, as identified on the Settlement Class List, and those Settlement Class Members who aver through a valid Claim Form and provide Reasonable Documentation that they were a California resident at the time of the Data Breach.

*Id.* ¶¶ 7, 58. Excluded from the Settlement Classes are: (1) the judges presiding over the Action, and members of their families; (2) loanDepot, its subsidiaries, parent companies, successors, predecessors, and any entity in which loanDepot or its parents have a controlling interest and their current or former officers, and directors, and (3) individuals who properly execute and submit a procedurally proper and timely Request for Exclusion prior to the expiration of the Opt-Out Period. *Id.*

In exchange for the Settlement's benefits, all Settlement Class Members will release all Released Claims against Defendant as detailed in the Settlement Agreement. *Id.* ¶¶ 40–42, 60.

**B.    The Settlement Benefits**

The Settlement provides for a non-reversionary cash Settlement Fund of $25 million, used to pay (i) all Administrative Expenses;[2] (ii) any Taxes; (iii) the cost of the Financial Monitoring and Insurance Services; (iv) any Monetary Payments, Out-of-Pocket Costs Payments, and California Subclass Payments; (v) any court-approved Service Awards; (vi) any court-approved Fee Award and Costs; and (vii) any other Settlement Benefits. SA ¶¶ 51, 64–87.

---

[2] Although Class Counsel negotiated a not to exceed amount of $1.5 million with Angeion for Settlement Administration, Class Counsel and Angeion agreed to reasonably revisit the not to exceed amount if the number of mailed notices exceeded the estimate by 1,000,000. However, as a result of an industry standard email address update and cleansing process and emails bouncing back as undeliverable, Angeion mailed approximately 4,067,124 notices (approximately 1,999,010 more than it had originally anticipated). Thus, Class Counsel and Angeion reasonably revisited the not to exceed and have agreed, subject to Court approval, that Angeion complete the Settlement Administration for an amount not to exceed $2,585,806.12. Joint Decl. ¶ 39-42; Weisbrot Decl. ¶ 26.

### 1. Financial Monitoring

Each Participating Settlement Class Member who submits a valid claim is eligible to receive two years of Financial Monitoring and Insurance Services. SA ¶¶ 24, 76. The Financial Monitoring will be Financial Shield Pro provided through CyEx by Pango Group, and includes the following benefits: Financial Transaction Monitoring; Monthly Credit Score; Score Tracker; Bank & Financial Account Monitoring; High Risk Transaction Monitoring; Real-Time Authentication Alerts; Fictitious Identity Monitoring; Home Title Monitoring; Dark Web Monitoring; Address Change Monitoring; Security Freeze Assist; Lost Wallet Protection; Insight & Tips News Feeds on the Customer Dashboard; Spend Tracking; $1,000,000 Comprehensive Identity Theft Insurance; Victim Assistance; and Customer Support. The Financial Monitoring and Insurance Services is valued at $12.95 per month for each Participating Settlement Class Member electing to receive that benefit. Thompson Decl. ¶ 9. Thus, for the two-year term, a single subscription is valued at $310.80. Accordingly, for every 1% of Participating Class Members, the Financial Monitoring benefit provides $52,599,813.76 in raw value based on the retail cost of the subscription, before deducting the cost of securing those services.[3] SA ¶ 87. As of June 24, 2025, there were 209,033 Claims submitted by Participating Settlement Class Members for Financial Monitoring. Weisbrot Decl. ¶ 19. Accordingly, the value of the Financial Monitoring to the Settlement Class is now estimated to be $64,555,661.39 (after deducting the cost of providing the Financial Monitoring services), and the total estimated value of the Settlement has increased to $98,869,661.39. Joint Decl. ¶¶ 92-93.

### 2. Cash Payments to Settlement Class Members

All Participating Settlement Class Members are eligible to submit a claim for

---

[3] Calculated as 169,240.07 (1% of the nationwide class) x $310.80 (value of two-year subscription).

cash payment of up to $5,000 for reimbursement of Out-of-Pocket Costs incurred on or after January 3, 2024, that relate to any identity theft and fraud fairly traceable to the alleged Data Breach. SA ¶¶ 34, 39, 76.b, 79. The claim must be supported by Reasonable Documentation. *Id.*

Each Participating Settlement Class Member will receive a payment from the Settlement Fund for the alleged damages they suffered from having their PII allegedly disclosed during the alleged Data Breach. The payment amount will be each Participating Settlement Class Member's *pro rata* share of the remaining Net Settlement Fund, after all other Settlement Benefits have been paid for out of the Remaining Net Settlement Fund. *Id.* ¶ 76.c. Based on the current claims figures, the Monetary Payment will be approximately $44.28. Weisbrot Decl. ¶ 21.

Each Participating Settlement Class Member that is part of the California Subclass will receive a California Subclass Payment to separately compensate them for their California statutory (i.e., CCPA) claim. *Id.* ¶ 76.d. The California Subclass Payment amount will be each Participating California Subclass Member's *pro rata* share of the California Subclass Settlement Fund, which is $3,650,000.00. *Id.* ¶¶ 8, 76.d. Under no circumstances will the California Subclass Payment exceed $150 per California Subclass member. *Id.* ¶ 76.d. Based on the current claims figures, the California Subclass Payment will be approximately $91.00 Weisbrot Decl. ¶ 21.

In the event the Monetary Payment to each Participating Settlement Class Member receiving that benefit or the California Subclass Payment to each Participating Settlement Class Member were to be less than Three Dollars and No Cents ($3.00), no Monetary Payments or California Subclass Payments will be made. *Id.* Instead, the Parties will meet and confer on how to disperse the Net Settlement Fund and present the plan to the Court for approval. *Id.* Participating Settlement Class Members will receive Settlement Payments via electronic means made available by the Settlement Administrator or may elect payment by physical check. *Id.* ¶ 77. Settlement Payments

will be reduced on a *pro rata* basis, if necessary. *Id.* ¶¶ 76.b-d, 82. Settlement Class Members will have 90 days following distribution to deposit or cash their Settlement Payment check. *Id.* ¶ 81. Participating Settlement Class Members with Approved Claims who receive Financial Monitoring will have 90 days following distribution of the enrollment instructions to enroll in the Financial Monitoring services. *Id.* ¶¶ 80–81.

Any monies remaining in the Net Settlement Fund or California Subclass Settlement Fund 180 days after distribution will be evenly distributed to all Participating Settlement Class Members with Approved Claims who cashed or deposited the initial payment they received, provided that the payment amount is equal to or greater than $3.00. *Id.* ¶ 84. Subject to Court approval, any Residual Funds will be distributed to the Non-Profit Residual Recipient, Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members. SA ¶¶ 28, 84; Declaration of Cindy Cohn in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. 83-5) ¶¶ 2-14. No portion of the Net Settlement Fund shall revert to loanDepot after the Effective Date. SA ¶ 84.

### 3. loanDepot's Business Practice Changes

In addition to monetary relief and as a result of this Action and further described in the Settlement Agreement, certain remedial efforts and business practices changes were undertaken and implemented by loanDepot following the Data Breach, including but not limited to enhancements in data management, identity protection, cloud security, and threat detection capabilities, which are estimated to have cost loanDepot $9,341,000.00. SA ¶ 86. The Parties agree that Class Representatives, Class Counsel, and this litigation were a substantial factor in these remedial efforts, the value of which is a meaningful benefit to all Settlement Class Members, regardless of whether they submit a claim, as well as other loanDepot customers who are not Class Members and

future loanDepot customers.

### 4.    Attorneys' Fees and Costs and Service Awards

On March 21, 2025, Class Counsel filed their Fee Motion (Dkt. 89) seeking an award of attorneys' fees not to exceed $7,500,000, reimbursement of litigation costs and expenses in the amount of $57,346.40, and Service Awards of $2,500 for each of the 20 Class Representatives. SA ¶¶ 105–110. These requested amounts are supported by the results achieved, the risk of continued litigation, the Settlement Value, the quality of Class Counsel's representation, awards in comparable cases, the contingent nature of the representation, the response of the Class, and the time and expenses incurred by Plaintiffs' Counsel. *Id.* The Notice informed Class Members that Class Counsel would seek such an award of attorneys' fees and costs and Service Awards for the Class Representatives, and the Fee Motion was posted on the Settlement Website. Weisbrot Decl. ¶ 16. Notably, no objections have been received from the Settlement Class Members. *Id*. ¶ 24.

### 5.    Total Settlement Value

Plaintiffs and Class Counsel conservatively estimate that the total present value of the Settlement Benefits exceeds $98 million. This total settlement value consists of the $25 million non-reversionary Settlement Fund, the improvements to loanDepot's data security practices valued at $9,341,000.00, and the value of the two years of Financial Monitoring based upon claims submitted for this Settlement Benefit. SA ¶ 87; Joint Decl. ¶¶ 10-12, 35-37, 91-92. As discussed above, the value of the Financial Monitoring to the Settlement Class is now estimated to be $64,555,661.39 based on the 209,033 claims for Financial Monitoring (after deducting the cost of providing the Financial Monitoring services).[4] When including the value of this benefit with the $25 million Settlement Fund and the $9,341,000 in Business Practice Changes undertaken

---

[4] The Financial Monitoring is valued at $12.95 per month for each Participating Settlement Class Member receiving that benefit. *See* Thompson Decl. ¶ 8.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   by loanDepot, the total Settlement Value is presently estimated at $98,869,661.39. *Id.*

2   **IV.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED**

3            In assessing whether to grant final approval, the Court analyzes (1) the propriety

4   of granting class certification for purposes of settlement, (2) the fairness of the

5   settlement, and (3) the reasonableness of the fees, costs, and service award requested.

6   *Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, No. 2:18-cv-08348-CJC-FFM, 2021

7   WL 606245, at *1 (C.D. Cal. Jan. 25, 2021). "The initial decision to approve or reject

8   a settlement proposal is committed to the sound discretion of the trial judge." *Officers*

9   *for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

10           **A.    Class Certification**

11           The Preliminary Approval Order (Dkt. 88) certified the Settlement Class for

12   Settlement purposes. Given that nothing has changed since the Preliminary Approval

13   Order, Plaintiffs respectfully request that the Court finally certify the Settlement Class.

14           **B.    The Settlement is Fundamentally Fair, Reasonable, and Adequate**

15           The Ninth Circuit has a "strong judicial policy that favors settlements,

16   particularly where complex class action litigation is concerned." *In re Hyundai and*

17   *Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted); *Van*

18   *Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ("[T]here is an overriding

19   public interest in settling and quieting litigation," and this is "particularly true in class

20   action suits.").

21           Approval of class action settlements is governed by Federal Rule of Civil

22   Procedure 23(e), and requires court approval. Courts must "determine whether a

23   proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing*

24   *Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and quotation marks omitted). In

25   considering whether this standard is met, courts consider various factors, including (1)

26   the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration

27   of further litigation, (3) the risk of maintaining class action status throughout the trial,

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, and (7) the reaction of class members to the proposed settlement. *Id.*

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation

Plaintiffs are confident that they would succeed if this case proceeded to trial, and that they would be able to prove that loanDepot's inadequate data security measures were the cause of the Data Breach and Plaintiffs' alleged damages. However, loanDepot vigorously disputes Plaintiffs' claims, and the risk, expense, and complexity of further litigation is significant. Joint Decl. ¶ 88. All class actions involve a high level of risk, expense, and complexity, but the emerging and evolving area of data breach litigation is especially risky and complex. *See Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) (observing that "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").

Although Plaintiffs believe their liability case is strong and class certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny Defendant's motion to dismiss and summary judgment motion, or find Plaintiffs and Class Members are entitled to damages. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data

breach settlement); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *1 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation). Even if Plaintiffs certified a class, successfully opposed a motion for summary judgment, subsequently proved liability at trial, and prevailed on all appeals, they still would face the significant risk of recovering less than trial damages (or nothing) for Class Members—and there is the additional risk that loanDepot could file for bankruptcy in the face of an enforceable judgment.

### 2.    The Risk of Maintaining Class Action Status Through Trial

As pointed out above, certification would have been hotly disputed and the outcome uncertain. A district court's order granting class certification under Federal Rule of Civil Procedure 23 is "inherently tentative" and is "subject to revision," so loanDepot would have been able to move for de-certification at any time before trial. *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978), *superseded on other grounds by rule*.

A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Even if Plaintiffs were to win class certification, there would remain a risk of losing on summary judgment or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Class, possibly for years.

### 3.    The Settlement is an Extraordinary Result for the Class

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook

1   engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google*

2   *LLC St. View Elec. Commc'ns Litig.,* No. 10-MD-02184-CRB, 2020 WL 1288377, at

3   *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class

4   with injunctive relief and creating a non-distributable *cy pres* settlement fund in

5   litigation alleging Google violated privacy by illegally gathering Wi-Fi network data);

6   *Diaz v. Google LLC*, No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) (seeking

7   final approval of non-monetary settlement of claims that Google exposed PHI and PII

8   through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-

9   04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. 406 (granting final approval of 16 injunctive

10  relief-only settlements in related privacy class actions accusing defendants of violating

11  child privacy protection laws by collecting and selling PII of children).

12      Here, the non-reversionary Settlement Fund ($25 million) and total value of the

13  Settlement (at least $98 million) relative to class size (16,924,007 persons) compares

14  favorably to the above settlements, along with other class action settlements alleging

15  violations of privacy and data security. *See e.g.*, *In re Google Plus Profile Litig.*, No.

16  518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement

17  fund of $7.5 million for 161 million Google+ users whose personal information was

18  exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES

19  (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential

20  claimants for unauthorized collection and disclosure of information from customers'

21  smart TVs); *Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK (C.D. Cal.

22  2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million

23  reversionary) for 435,000 class members in data breach case); *In re Linkedin User Priv.*

24  *Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for

25  approximately 6.4 million LinkedIn users).

26      The proposed Settlement provides equivalent, if not greater, relief to the

27  Settlement Class Members compared to other approved data breach settlements. The

28

$25 million Settlement Fund equates to $1.48 per Settlement Class Member (i.e., per capita[5]), which is comparable to (or better than) other data breach settlements of this magnitude. *See, e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) ($0.05 per capita); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592, Dkt. 322 (C.D. Cal May 10, 2019) ($1.47 per capita); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) ($1.06 per capita); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($0.20 per capita); *In re Anthem, Inc. Data Breach Litigation*, No. 5:15-md-02617-LHK, (N.D. Cal. 2017) ($1.39 per capita). Moreover, the per capita or per Class Member amount only accounts for the amount of the Settlement Fund—it does not account for the Total Settlement Value (which includes the value of Financial Monitoring and business practice changes).

### 4.    The Extent of Discovery Completed and the Stage of Proceedings

Class Counsel obtained ample information through settlement negotiations—including robust pre-mediation and confirmatory discovery—that provided sufficient information to gauge the strengths and weaknesses of Plaintiffs' claims and the probability of success on the merits. Joint Decl. ¶ 22. The information provided by loanDepot was appropriately targeted at information relevant to the Settlement. *Id.*; *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Manual for Complex Litigation (Fourth) § 13.12 (recognizing benefits of settlement are

---

[5] The "per capita" metric is commonly used in measuring data breach class action settlements, and is determined by dividing the value of a common fund by the number of class members. This number tends to follow a sliding scale, with it being higher for smaller class sizes and smaller with larger class sizes. The per capita value says nothing, however, of the actual amounts that will be distributed to Participating Class Members. Those figures will be significantly higher and are based on settlement participation.

diminished if postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery and protracted litigation. *See* Manual for Complex Litigation (Fourth) § 11.423. Class Counsel's analyses of the mediation and confirmatory discovery aided them in confirming the Settlement's fairness. Joint Decl. ¶ 22.

The timing of the Settlement allowed Plaintiffs to maximize the recovery for the class and direct resources (i.e., funds) to the Settlement Class that otherwise would have been spent on litigation. By resolving this case at this stage of the proceedings, Plaintiffs maximized the recovery to the Class and secured an amount that is favorable compared to other approved data breach settlements.

### 5.    The Experience and Views of Counsel

Plaintiffs are represented by accomplished attorneys who are leaders in their field with extensive experience in prosecuting consumer class actions, including data breach actions. Joint Decl. ¶¶ 53-87. The Settlement provides Settlement Class Members with immediate, certain, and meaningful relief that directly addresses the issues they have experienced, or might experience, relating to the Data Breach. The language of the release is properly tailored to the Data Breach. SA ¶¶ 40−42, 60. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class. Joint Decl. ¶¶ 7, 88.

### 6.    The Class Members' Positive Reaction to the Settlement

The Objection Deadline and Opt-Out Period passed on April 27, 2025, and the Settlement Administrator received only 255 Requests for Exclusion (249 were determined to be valid; 5 were signed by an individual that was not the Settlement Class Member requesting exclusion; and 1 was unable to be matched to a Settlement Class Member record on the Class List) and no objections. Weisbrot Decl. ¶¶ 23-24. This demonstrates the positive reaction of the Settlement Class to this Settlement. *See*

1    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)

2    ("[T]he absence of a large number of objections to a proposed class action settlement

3    raises a strong presumption that the terms of a proposed class action settlement are

4    favorable to the class members.").

5         The Claims Period closed on May 27, 2025, and as of June 24, 2025, a total of

6    211,642 claims have been received from the Settlement Class. Weisbrot Decl. ¶ 18.

7    This amounts to approximately 1.27% of the 16,697,437 unique Settlement Class

8    Members. *Id.*  The Participating Settlement Class Members' claims included 209,033

9    requests for Financial Monitoring. *Id.* ¶ 19. In addition, approximately $157,578.20

10   has been approved thus far for Claims for Out-of-Pocket Costs. *Id.* ¶ 20. Finally, each

11   of the of 211,642 valid and timely claims will receive a Monetary Payment of $44.28

12   and California Subclass Members will receive a California Subclass Payment of $91.00

13   estimated based on the current claims figures, and assuming the Court awards

14   Plaintiffs' requested fees, costs, and Service Awards. *Id.* ¶ 21.

15          **7.**    **The Rule 23(e)(2) Factors are Satisfied**

16        Pursuant to Rule 23(e)(2), the Court also must find the settlement "fair,

17   reasonable, and adequate" after consideration of the following factors:

18           (A) the class representatives and class counsel adequately
     represented the class;
19           (B) the proposal was negotiated at arm's length;

20           (C) the relief provided for the class is adequate, taking into account:

21               (i) the costs, risks, and delay of trial and appeal;

22               (ii) the effectiveness of any proposed method of distributing
     relief to the class, including the method of processing class-
23   member claims;

24               (iii) the terms of any proposed award of attorney's fees,
     including timing of payment; and
25               (iv) any agreement required to be identified under Rule
     23(e)(3); and

26           (D) the proposal treats class members equitably relative to each
     other.
27

28   Fed. R. Civ. P. 23(e)(2).

### a) The Class Representatives and Class Counsel Adequately Represented the Class

Plaintiffs and Class Counsel vigorously and adequately represented the Settlement Class. Plaintiffs do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982). Further, through the litigation to date, Plaintiffs and Class Counsel submit and understand their responsibility in serving as Class Representatives and Class Counsel and have committed themselves to vigorously pursuing litigation on behalf of the putative class, through the Effective Date and ultimate conclusion of the Settlement. *See* Joint Decl. ¶¶ 53-87; Declarations of Plaintiffs (Dkt. 83-1) ¶ 8.

### b) The Settlement is Non-Collusive and Was Negotiated at Arm's Length

The Settlement was reached after nearly six months of hard-fought, arm's-length negotiations, including a full-day mediation and subsequent negotiations with an experienced mediator conducted by experienced attorneys. Joint Decl. ¶ 9; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (formal mediation with experienced mediator weighs "in favor of a finding of non-collusiveness"). The mediator, the Hon. Jay Gandhi, is a former United States Magistrate Judge for the Central District of California. Judge Gandhi's declaration attests to the hard-fought nature of the negotiation, his work challenging each side on their positions and arguments, and how each side zealously advanced their respective positions. Dkt. 83-2, ¶¶ 5–6. Further, Class Counsel have significant experience prosecuting data breach consumer class actions and are well-informed of the legal claims and risks of this case. Joint Decl. ¶¶ 53-87, Exs. 1–5. After reaching agreement on material terms, the Parties conducted confirmatory discovery and further negotiated the terms of the Settlement, the related exhibits, and the Notice Plan. *Id*. ¶¶ 21-25.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Settlement easily withstands "great[] scrutiny," (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 949) because: (1) the attorney fees were negotiated after all other materials terms of the settlement, (2) this is a non-reversionary cash settlement, (3) the majority of the cash being provided by loanDepot for this Settlement will be provided to the Settlement Class, and (4) the Settlement is in no way conditioned on the approval of the fee request. SA ¶¶ 110; *see also Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK, 2022 WL 17253907, *12 (C.D. Cal. Nov. 15, 2022) (granting preliminary approval and finding no collusion where non-reversionary settlement reached under supervision of mediator).

In addition, as discussed above and in greater detail in the Fee Motion, the requested fees are an amount that is within the Ninth Circuit's 25% benchmark for common fund cases. Based on the updated lodestar information (Joint Decl. ¶¶ 49-52), Class Counsel and other Plaintiffs' Counsel devoted 4,308.7 hours on this litigation and incurred a collective lodestar of $3,557,273.90, which represents a modest lodestar multiplier of 2.11. This is fair and reasonable in light of the significant risks Counsel faced, the contingent nature of the case, the complexity of the issues presented, and the excellent results achieved. Based on current claims figures, Class Counsel are seeking just 7.6% in fees of the current estimated total settlement value as of June 24, 2025.[6]

### c) The Relief to the Class is Adequate

As set forth above, the Settlement Benefits and relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay that further motion practice, trial, and associated appeals would entail. The Settlement is valued in excess of $98 million, including the $25 million non-reversionary Settlement Fund, $9.34 million in Business Practice Changes implemented by loanDepot in response to

---

[6] $7,500,000.00 (Class Counsel's Fee Request) ÷ $98,869,661.39 (Total Settlement Value as of June 24, 2025) = approximately 7.6% (Percentage of Fees Requested of Total Settlement Value).

1    this litigation, and the more than $64 million in value that the Financial Monitoring

2    services provides to Participating Class Members. Joint Decl. ¶¶ 91-92.

3    **d) The Settlement Treats Class Members Equitably**

4    The Settlement treats Class Members equitably relative to each other and their

5    claims. All Class Members are eligible to receive a cash payment of up to $5,000 for

6    reimbursement of Out-of-Pocket Costs that are fairly traceable to the Data Breach, pro

7    rata Monetary Payment, and a pro rata California Subclass Payment for residents of

8    California to compensate for their California statutory claims. In addition, all

9    Settlement Class Members are eligible to receive two years of Financial Monitoring

10   through CyEx. Accordingly, the Settlement treats all Class Members equitably.

11   **V.    CONCLUSION**

12   For all the foregoing reasons, Plaintiffs respectfully request that the Court grant

13   Plaintiffs' Motion for Final Approval and enter the proposed final judgment and order

14   consistent with the terms of the Settlement in this case.

15

16   Dated:  June 27, 2025                    Respectfully submitted,

17

18                                            */s/ Daniel S. Robinson*
                                              Daniel S. Robinson

19                                            Michael W. Olson
                                              ROBINSON CALCAGNIE, INC.

20                                            19 Corporate Plaza Drive
                                              Newport Beach, California

21                                            (949) 720-1288; Fax: (949) 720-1292
                                              drobinson@robinsonfirm.com

22                                            molson@robinsonfirm.com

23                                            */s/ Stephen G. Larson*
                                              Stephen G. Larson

24                                            LARSON, LLP
                                              555 S. Flower Street, 30th Floor

25                                            Los Angeles, CA 90071
                                              (213) 436-4864; Fax: (213) 623-2000

26                                            slarson@larsonllp.com

27                                            */s/ Tina Wolfson*
                                              Tina Wolfson

28                                            Deborah De Villa
                                              AHDOOT & WOLFSON, PC

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2600 W Olive Ave, Ste 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
ddevilla@ahdootwolfson.com

2

3

4
*/s/ Abbas Kazerounian*
Abbas Kazerounian
Mona Amini
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
(800) 400-6808; Fax: (800) 520-5523
ak@kazlg.com
mona@kazlg.com

5

6

7

8

9
*/s/ Gary M. Klinger*
Gary M. Klinger
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

10

11

12

13

14
**Class Counsel**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned Class Counsel certifies that this brief contains 6,193 words, which complies with L.R. 11-6.1.


Dated: June 27, 2025                                  /s/     *Mona Amini*
                                                            Mona Amini

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: June 27, 2025                                    */s/  Mona Amini*
                                                         Mona Amini

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT